The Gulf, Colorado & Santa Fe Railway Company
v. W. P. Cusenberry.

No. 104.

**1. Title in Action for Trespass upon Lands.**

Possession of land under a claim of title is sufficient evidence of title in a plaintiff to enable him to sustain an action for an injury to the premises. But possession is only prima facie proof of title, and it is competent for the defendant to rebut such presumption by showing that the land, notwithstanding such possession, belonged to another ...... 527

**2. Documentary Evidence Introduced may be Used by Both Parties.**

Deeds and patents introduced by plaintiff in evidence for all purposes could be used in behalf of the defendant as if offered in its own behalf. See example...................................................... 528

**3. Limitation—Exceptions to Statute—Practice.**

Where facts are established giving title under the statute of limitations, in order to defeat the title so established the burden is upon the adverse claimant to show the disability of coverture or other statutory exception ........................................................ 528

**4. Evidence.**

Plaintiff in suit for damages proved the alleged injury by burning grass upon a survey in which plaintiff owned the south half. The testimony was insufficient; it devolved upon plaintiff to prove the burning was upon the south half owned by him .......................... 528

**5. Limitation of Five Years.**

In action for trespass upon land, where the right to recover depended upon plaintiff proving title by limitation of five years, it was necessary that plaintiff prove that the five years possession, etc., had ended before the trespass; it is not sufficient that the time ended before the trial. 529

**6. Same—Practice.**

Where the testimony as to possession or as to the payment of taxes is controverted, or not clear and specific, the issue should be submitted to the jury ..................................... ....................... 529

**7. Action by Tenant in Common—Abatement.**

The rule is well settled by decisions of this court, that in a suit to recover damages for an injury to real property all the tenants in common must join; but advantage of the defect must be taken by plea in abatement. In absence of such plea the plaintiff may recover damages in amount proportionate to his interest in the property ................ 529

**8. Tenant at Will—Damages to the Land.**

A tenant at will has no claim against a trespasser upon the land; the right for damages is in the landlord. A subsequent contract of lease between the parties in which the landlord yielded to the tenant the claim for injuries during the term, will have no effect upon the right of the landlord for injuries during the tenancy at will ................ 530

**9. Negligence by Railway—Combustible Materials on Track.**

It is not negligence per se for a railway company to permit grass and weeds or other combustible material to accumulate upon its right of way. In the work of clearing off the right of way, if an employe,

under the existing circumstances, acted in a prudent and careful manner in starting a fire (from which damage resulted), the railway would not be liable, although there had been negligence in allowing the grass, etc., to accumulate. The facts are to be passed upon by the jury in determining whether proper care was taken......................... 531

## 10. Charge—Negligence—Burning Grass.

In an action against a railway company for negligently permitting the escape of fire from its right of way, to the injury of adjacent lands, the court did not define negligence in its charge to the jury. It was therefore proper for the defendant to request an instruction covering the omission. In this case a charge not accurate was asked, but held sufficient to call the attention of the court to the omission, and thus present the defect for revision on appeal. See example.............. 532

## 11. Pleading Title by Limitation.

It seems that in an action for injury to lands the plaintiff should not be permitted to prove title by limitation without having pleaded it, provided objection be made to the testimony............................ 533

ERROR to Court of Civil Appeals for Third District, in an appeal from Coleman County.

*J. W. Terry*, for plaintiff in error.

*Sims & Snodgrass*, for defendant in error, cited: Railway v. Overman, 10 N. E. Rep., 575; Gram v. Railway, 46 N. W. Rep., 975; Railway v. Nitche, 26 N. E. Rep., 52; Railway v. Williams, 30 N. E. Rep., 69; Gould v. Railway, 52 N. W. Rep., 924; Billings v. Railway, West Pub. System, vol. 2, 837; Kellogg v. Railway, 26 Wis., 223; 1 Platt on Leases, 22, 23, 657; Tayl. on Landl. and Ten., secs. 173–178, 64; 4 Wait's Act. and Def., 276; Estey v. Baker, 50 Me., 330; Jeffer v. Gifford, 4 Barron, 141; Cushing v. Kenfield, 5 Allen, 307; Starr v. Jackson, 11 Mass., 518; French v. Fuller, 23 Pick., 104; Wood v. Griffin, 46 N. H., 238; Railway v. Ferry Co., 82 Ill., 223; Crommelin v. Thies & Co., 31 Ala., 418; Shipman v. Mitchell, 64 Texas, 176; 1 Sedg. on Dam., secs. 67–71.

GAINES, ASSOCIATE JUSTICE.—The appellee brought this suit, in right of his wife, to recover of appellant damages for the negligent burning of grass upon lands alleged to belong to his wife, and for the negligent killing of a cow, also alleged to be the property of the wife.

The lands described in the petition were covered by several patents from the State of Texas, all of which the plaintiff introduced in evidence. He also showed title in his wife, through regular chains of conveyances, to all the lands, except to the T. S. Goodrum survey of 853½ acres, the southeast quarter of survey number 67, in the name of the Buffalo Bayou, Brazos & Colorado Railway Company, and to the north half of survey number 65, patented upon a certificate granted to the same company.

The plaintiff only claimed title in his wife to an undivided half of the Goodrum survey, and as to that survey claimed a recovery for one-half of the damages only which had accrued upon it. He exhibited in evidence a deed from one Branch to W. P. Cusenberry, E. T. Cusenberry, and D. B. Cusenberry to an undivided one-half interest in that survey, which was recorded February 19, 1883.

A deed was also introduced in evidence from one Ricker to W. P. Cusenberry to the southeast quarter of Buffalo Bayou, Brazos & Colorado Railway Company survey number 67. No conveyance either of the Goodrum or of survey number 67 from the respective patentees was shown to either Branch or Ricker.

The plaintiff also introduced in evidence a deed, dated February 8, 1886, from W. P., E. T., and D. B. Cusenberry to the wife of plaintiff for all of the lands described in the petition, including the undivided one-half interest in the Goodrum survey, the southeast quarter of Buffalo Bayou, Brazos & Colorado Railway Company survey number 67, and the north half of Buffalo Bayou, Brazos & Colorado Railway Company survey number 65. To the north half of number 65 there was no conveyance exhibited to the grantors in the last mentioned deed, or to either of them.

The plaintiff testified, that the lands were enclosed as a pasture in the summer of 1883 by W. P., E. T., and D. B. Cusenberry, and have ever since been adversely held by them and by his wife, to whom they conveyed them in 1886. He also testified, that since the time the lands had been enclosed all taxes on them had been paid by the occupants.

In logical order, the first question in the case is as to the sufficiency of the evidence to show title in the wife of plaintiff to the lands upon which the grass was burned. The court in its charge assumed that such title had been proved, and instructed the jury, in effect, to find for the plaintiff, provided they believed from the evidence that the grass had been negligently burned as alleged in the petition. Counsel for the defendant in error insisted that the charge was not erroneous, for two reasons; first, because proof of possession is sufficient evidence of title against a mere wrongdoer; and second, because, as they claim, as to all the land to which the plaintiff failed to show a right in the wife of the plaintiff by a consecutive chain of title from the sovereignty of the soil, he showed title in her by the statute of limitations.

Possession of land under a claim of title is sufficient evidence of title in a plaintiff to enable him to sustain an action for an injury to the premises. Express Co. v. Dunn, 81 Texas, 85; Railway v. Timmermann, 61 Texas, 660; Kolb v. Bankhead, 18 Texas, 228; Parker v. Railway, 71 Texas, 132.

But possession is only prima facie evidence of title; and we are of opinion that it is always competent for the defendant in such a case to

rebut the presumption arising from possession by showing that the title, notwithstanding such possession, is in another.

The patents and deeds introduced in evidence by the plaintiff were in evidence for all purposes, and were as available to the defendant as if offered in its own behalf. The patent to Goodrum showed the title to that survey in him, and there was no conveyance to show that he had ever parted with it. So also the patent to Willard to the Buffalo Bayou, Brazos & Colorado Railway Company survey number 67 and the deed from Willard to Thomas showed title to that survey in Thomas, and there was nothing to prove that he had ever conveyed the southwest quarter of the section. The patent and the deeds to number 65, Buffalo Bayou, Brazos & Colorado Railway Company, also brought the title of that survey down to W. H. Thomas, but no further.

As to these tracts, therefore, the plaintiff's case must stand, if at all, upon his proof of title in his wife by the statute of limitations. He showed continuous adverse possession, with payment of taxes, of the Goodrum survey, and of the southeast quarter of the Buffalo Bayou, Brazos & Colorado Railway survey number 67, under duly recorded deeds, for the full period of five years before the first fire, which occurred December 3, 1888. This established title in the wife to these tracts by the statute of limitations.

In order to defeat the title so established, the burden was upon the defendant to show the disability of minority or coverture, if any such existed. This it did not do.

No evidence of title to the north half of survey number 65, Buffalo Bayou, Brazos & Colorado Railway Company, was exhibited in the wife, save the deed from W. P., E. T., and D. B. Cusenberry to her, which was not executed until the 8th day of February, 1886, and not recorded until the 10th day of that month. The only fire upon this survey that was proved occurred in March, 1890, within five years from the record of the wife's deed, and it was not shown that it occurred on the south half of the survey, the part to which she had shown title by a consecutive chain of conveyance from the State.

The burden was upon the plaintiff to prove that the injury was done to land to which title was shown in the wife, and the evidence leaving it indeterminate whether the burning occurred upon the north half or the south half of the survey, it became important whether she showed title to the former by the statute of limitations.

It is contended on behalf of appellee, that since possession, with payment of taxes under a recorded deed, was shown to have continued for the full period of five years at the date of the trial, this was sufficient to justify a recovery for an injury to the land in question which occurred before that time.

In this proposition we do not concur. It is quite clear to us, that in

·order to maintain his action for an injury to the north half of the survey it was incumbent upon the plaintiff to show that his wife had title to that half at the time the injury occurred.

It follows that in our opinion the court erred in charging the jury that they should find for the plaintiff, if they believed the grass upon the lands was burned by reason of the negligence of defendant's servants. It should have charged, that under the evidence as to title they could give no damages for the injury done to survey number 65.

The amount of damages claimed in the petition for the injury to this tract was only $30, and the defendant in error offers in this court to remit this sum, in the event the court determines that there was error in the charge in the particular in question. Since we have determined that the judgment must be reversed upon another ground, it is not necessary for us to decide whether such remittitur would cure the error or not.

It is insisted by plaintiff in error, that the evidence as to the payment of taxes was not sufficient to have justified the court in assuming in its charge to the jury such payment as an uncontroverted fact. In view of another trial, we deem it sufficient to say, that should the evidence as to possession or as to the payment of taxes be controverted, or be not clear and explicit, the court should submit the question for the determination of the jury.

Under the assignment as to error in the charge under consideration, it also seems to be claimed that there was error in permitting a recovery of damages for the injury done to the Goodrum survey, because the owner of the undivided half of that tract was not made a party. The plaintiff alleged title in his wife to an undivided one-half interest in that survey only, and asked a recovery for one-half only of the damages thereto. The rule is well settled by the decisions of this court, that in a suit to recover damages for an injury to real property, all the tenants in common must join; but that advantage of the defect in the petition must be taken by a plea in abatement, and that in the absence of such plea the plaintiff may recover damages in an amount proportionate to his interest in the property. May v. Slade, 24 Texas, 205; Rowland v. Murphy, 66 Texas, 534; Parks v. Dial, 56 Texas, 261; Lee v. Turner, 71 Texas, 264. The plea in abatement must give the plaintiff a better writ. Hence the defendant should not only have pleaded the nonjoinder, but the plea should have shown who were the owners of the other half-interest. Not having done this, it can not now complain that the plaintiff was permitted to recover one-half of the damages to a survey to which he showed title in his wife to an undivided one-half interest.

It is also claimed that the court erred in refusing a special charge asked by the defendant, to the effect, that if the jury found that the land in controversy was leased to the Day Land and Cattle Company on the 3rd

day of December, 1888, that in estimating plaintiff's damages resulting from the fire which occurred on that day, they should also estimate the damage done to the cattle company by reason of the destruction of the grass, and deduct the latter amount from the whole amount of damage done the turf, roots, and grass, and find for plaintiff only for the difference.

The evidence showed that the Day Land and Cattle Company had the land leased from sometime in the summer of 1888 to the last day of November of that year. The plaintiff, upon the expiration of that lease, sent a proposition to the agent of the cattle company for a renewal of the lease. This was not accepted. About the 1st of February, 1889, the parties made a new contract for the lease of the land, which was antedated as of December 1, 1888, and provided that it should extend from that date until November, 1889.

The terms of the new lease were materially different from the terms of the old one. It contained a provision that the plaintiff "relinquishes all claims for burns made by the railway after February 1, 1889." The latter is presumed to be the day on which the lease was actually executed.

Now it is clear, we think, that after the expiration of the first lease the tenant never agreed, expressly or impliedly, to remain for another term upon the original stipulations. The landlord having made a proposition for a renewal, which the cattle company had failed to accept, the latter was at most a tenant at will, or probably only a tenant at sufferance. As such it was not entitled to recover any part of the damage done to the land by the fire of December 3, 1888. If it acquired any such right, that right must have accrued by reason of the lease actually executed in February, 1889. The right to recover the damage was in the plaintiff before that contract was entered into. Did such right pass by virtue of that contract? This must be determined by the intent of the parties, as deduced from the language of the writing, construed in the light of the circumstances surrounding the transaction.

The lessor expressly relinquished to the lessee all claims for grass that might be burned by the railway company after the lease was actually executed; but nothing is said as to the claim for the previous burn. The maxim that the mention of one thing excludes another is applicable to the stipulation, and leads to the construction that the claim for damages which had already accrued was not to be assigned to the tenant. Even if the parties meant to leave the question of their respective rights to these damages open, it is no matter; for we have seen the right to the recovery therefor was already in plaintiff.

The burning of December 3, 1889, originated in a fire started by the servants of the defendant company for the purpose of clearing its right of way. The evidence discloses, that the day was clear, and that there was a gentle wind from the south; that there were grass and weeds upon

both sides of the track, and even upon the track itself, which were dry and combustible, but that before starting the fire the section men cut the grass and weeds between the ties and for a space of two feet from the ends of the ties on both sides of the track. The section foreman who stated these facts testified also, that the spread of the fire which caused the damage to the land was brought about by a slight whirlwind, which carried fragments of the burning grass and weeds on the south side of the track to the north side, fifty-eight feet from the middle of the track, and deposited them on plaintiff's land beyond the defendant's right of way. The whirlwind which spread the fire, as the witness testified, was " one of those little funnel-shaped whirlwinds " which were frequent in that section.

In relation to this matter, the court at the request of the plaintiff gave the following charge:

" If you believe from the evidence that the defendant negligently permitted weeds and grass to grow and accumulate upon its right of way at or near the place where the section foreman, McNulty, was burning off said right of way, if you find he was so burning same, and further believe from the evidence that this growth of grass and weeds, if any, contributed to and caused the fire to spread to the lands of plaintiff, then you are instructed that defendant would be liable to whatever damage was sustained thereby under the rules already given you for ascertaining same, even though you should believe said McNulty acted in a prudent and careful manner, as already explained to you, in starting said fire."

Error is assigned upon the charge. The instruction, if not based upon a misconception of the law of the case, is seemingly contradictory, and was calculated to confuse the jury. It is not negligence per se for a railway company to permit grass and weeds or other combustible matter to accumulate upon its right of way. Gram v. Railway, 46 N. W. Rep., 975. When it is proved that a railway company has permitted inflammable material to remain upon its right of way, and that fire has been communicated to it by sparks or cinders from a passing engine, and that the fire has spread to and injured the property of another, the courts hold that these facts are sufficient to warrant the jury in finding that the company is guilty of negligence, and to hold it responsible for the injury, although it may be shown the engine is of the most approved pattern, and was operated by a skillful engineer, and in a careful manner.

The holding proceeds upon the principle, that by reason of the fact that fire may be communicated by the best of engines, operated with reasonable care by competent persons, it may be negligent to allow matter to accumulate which is likely to take fire from such an engine, and to communicate it to adjacent property. But such evidence raises a question of fact, which is wholly for the determination of the jury.

But we are of the opinion that in this case it was a matter of no mo-

ment whether the place at which the fire first caught north of the track was upon defendant's right of way or not. The question for the jury to determine was, whether the act of the section men in starting the fire south of the track was, under all the circumstances, negligent or not. If there was reasonable danger of the communication of the fire, either directly to the land of the plaintiff's wife, or by first igniting the grass and weeds upon the right of way north of the track, and then spreading to her land, then the company was liable. Although in view of the danger from passing engines the company may have been negligent in permitting the grass and weeds to remain upon its right of way on the north side of its track, it did not necessarily follow that its servants were negligent in starting a fire upon the south side.

It follows, that if under the existing circumstances "McNulty acted in a prudent and careful manner * * * in starting said fire," the company was not liable, although it may have been negligent in allowing the grass and weeds to accumulate in respect to another matter. The instruction lays down the contrary proposition, and is therefore erroneous. This error requires a reversal of the judgment.

The defendant asked the court to give the jury the following instruction:

" You are instructed, that the defendant had the right to kindle fire on its right of way for the purpose of burning the same off, if it used reasonable care to prevent it from spreading and injuring the property of others. If you believe from the evidence in this case, that on or about December 3, 1889, defendant, through its agent or employe, in burning off its right of way, communicated fire to plaintiff's pasture, it would be liable for any damages resulting therefrom, unless you believe from the evidence that defendant, or its employes, in the burning of said right of way, acted in a prudent manner and was guilty of no negligence in taking care of it (the fire) and preventing it spreading, then (in which event) defendant would not be liable for any injury resulting to plaintiff from the spreading of said fire."

The charge was refused by the court. The court in its charge nowhere defined negligence, and in that respect it was defective. This made it proper, therefore, to give more specific instructions at the request of either party.

We doubt whether the charge in question should have been given in the form in which it was presented. The first proposition embodied in it was calculated to lead the jury to the conclusion that the defendant was not liable if its servants used due care in preventing the fire from spreading, although under the circumstances they were negligent in the first instance. But we think the purpose in requesting the charge was to have the court submit to the jury a correct proposition of law, and that

if not strictly correct, it ought to be deemed sufficient to suggest to the court the propriety of a correct charge embodying that proposition.

A man has a right to start a fire upon his own premises, just as he has a right to set in operation any other dangerous agency, provided the circumstances are such as show that the act may be done with reasonable safety to the persons or property of others. He must use in every instance care commensurate with the danger. If a person of ordinary prudence would have done the act under the same circumstances, he can not be held liable for starting a fire.

In view of a new trial, we will say, that it may be gravely doubted whether the plaintiff should have been permitted to prove title by limitation without having pleaded it, provided objection had been urged to the introduction of the testimony. See Mayers v. Paxton, 78 Texas, 196.

The judgments of the District Court and of the Court of Civil Appeals are reversed and the cause remanded.

*Reversed and remanded.*

Delivered April 2, 1894.