WOLF et al. v. LANE. (No. 5241.)

(Court of Civil Appeals of Texas. San Antonio. April 1, 1914. Rehearing Denied April 29, 1914.)

1. TRESPASS TO TRY TITLE (§ 44*)—SUFFICIENCY OF EVIDENCE—OWNERSHIP.

Where, in trespass to try title, though defendants pleaded not guilty and a general denial, the ownership of the land was not really in issue, the controversy being as to damage for pasturing cattle on the land, and defendant did not claim the land, but, on the contrary, admitted that he leased it from plaintiff, and a deed from defendant to plaintiff was in evidence, there was sufficient evidence of plaintiff's ownership to justify an instruction to find for plaintiff as to the title; it not being necessary to show a title from the state, where plaintiff's title and possession, until the ouster, is not disputed.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 66; Dec. Dig. § 44.*]

2. TRESPASS TO TRY TITLE (§ 46*)—VERDICT—SUFFICIENCY.

Where the petition, in trespass to try title, alleged title, and that defendants ousted plaintiff from possession, thereby damaging him, and the real issue was as to damages for pasturing cattle on the land, a verdict finding defendants guilty as charged, and assessing damages, was not insufficient as failing to find as to the ownership, since a verdict defective in not finding expressly upon an issue may be aided by the pleadings, and defendants could not be guilty as trespassers unless plaintiff was the owner.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 68; Dec. Dig. § 46.*]

Appeal from District Court, Dimmit County; J. F. Mullally, Judge.

Action by B. G. Lane against E. A. Wolf and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Geo. C. Herman, of Batesville, and J. O. Rouse, of Carrizo Springs, for appellants. Wm. H. Davis, of Crystal City, Vandervoort & Johnson, of Carrizo Springs, and Ben P. Lane, of San Antonio, for appellee.

CARL, J. B. G. Lane sued E. A. Wolf and John Wolf in the form of trespass to try title to 3,840 acres of land in Dimmit county, and for damages. The real issue was for damages for pasturing cattle on the land. E. A. Wolf had sold this land to Lane, and then leased it from him. E. A. Wolf occupied the land until March, 1911, when he and Lane entered into a memorandum of agreement which was to date back to January 1, 1911, whereby he was to have free use of the pasture and $25 per month in consideration of his putting about 60 acres in cultivation, building certain fences, etc., and Lane was to have one-half of the crop. This contract was to run until January 1, 1912. Lane was also to furnish teams, etc. Lane says it was agreed that Wolf should have the right to keep only about 40 head of horse stock on the land; that at that time John Wolf had stock in the pasture which he promised to take out, but which he did not take out until about January 1, 1912. He

further says that E. A. Wolf did not make the improvements; that at the time he saw the pasture there were 400 or 500 head of cattle in it, but that he was not there from the time the contract was signed in March until August, 1911, when he again visited it and found the grass all gone. Ed English says he sold E. A. Wolf 800 or 900 head of cattle, but that Wolf sold part of them before he took them out of the pasture. Sam English says that during 1911 E. A. and John Wolf were in possession of the land in controversy, and had cattle there; that John Wolf put some cows in there, and that there were about 300 of them, but that John Wolf sold them in the summer of 1911; that the cattle were a mixed lot; and that E. A. Wolf claimed to own the cattle which were put in the pasture. E. A. Wolf says that he first put in 135 head of cattle of his own, and that later he put in some 200 head more, and that, when he left there in August, 1911, there were from 450 to 480 head of cattle in the pasture. John Wolf says that, when he bought the cattle from E. A. Wolf, he was to pay for them only as he took them out; that E. A. Wolf owed him, and he paid for them by giving credit to E. A. Wolf. He says he took out all but 150 head in September, 1911; that at the time he had about 350 to 380 head, which he turned into the Capones land, leased from Prior in September, 1911. John Wolf says he paid E. A. Wolf $50 per month for the pasture by crediting him with that amount. Lane says John Wolf, in March, 1911, promised him he would take the cattle out, after he had repeatedly requested him to do so.

The two defendants entered a plea of not guilty and general denial, and the court charged the jury that the title to the land was in the plaintiff, and to find for him, and then gave a charge on the matter of damages. The verdict of the jury was: "We, the jury, find the defendants guilty as charged, and assess the damages at three hundred ($300.00). C. M. Decker, Foreman." On that verdict, the court entered judgment in favor of appellee, Lane, for the land and also for $300 damages.

The defendants below did not claim the land; but E. A. Wolf claimed the free use of it under his contract.

June ——, 1911, Lane sold an undivided one-half interest in the 3,840 acres of land to N. V. Henderson, and in the same month Henderson and Lane sold to E. C. Monday an undivided one-half in all of it, thus leaving Lane a one-fourth interest.

[1] It is contended that the verdict was insufficient to authorize the court to enter judgment for the land, because it did not dispose of all the issues. That is, no finding was made as to the ownership of the land, although the court charged the jury that plaintiff owned it, and so to find. The ownership of this land was not really in issue, although the usual plea of not guilty was entered.

Wolf did not claim the land, but, on the contrary admits that he had leased it from Lane. Furthermore, a deed was introduced whereby E. A. Wolf conveyed this land to Lane; and where, as in this case, Lane is shown to have a deed, and his possession, until the ouster, is not disputed, it is not necessary that he connect himself back with the sovereignty of the soil. The deed introduced and his evidence of ownership were sufficient proof of his ownership, especially when not attacked or questioned, and the court properly instructed the jury that they should find for the plaintiff as to the title to the land. Kolb v. Bankhead, 18 Tex. 232; G., C. & S. F. Ry. Co. v. Cusenberry, 86 Tex. 528, 26 S. W. 43. In the Kolb v. Bankhead Case, supra, a similar suit to this was brought on account of the cutting of timber, and the deed to the plaintiff was introduced to show ownership. The jury in that case returned a verdict as follows: "We, the jury, find the defendant guilty, and impose a fine of one hundred dollars." It was claimed this was insufficient; but Justice Wheeler affirmed that case. It is stated therein that the introduction and identification of the land described therein raises a presumption that title and ownership of the premises vested in the plaintiff. That would certainly be true in this case, where the defendants admitted the ownership was not in them, and a deed from E. A. Wolf to B. G. Lane was introduced. This, coupled with the defendants' acknowledgment that they leased from Lane, is sufficient.

[2] This suit is one in trespass, and, when the jury finds defendants guilty as charged, it necessarily follows that they found that the land belonged to plaintiff, and defendants had interfered with his possession. The petition charged that the land belonged to plaintiff, and that they had ousted him from possession, thereby damaging him. To this they pleaded not guilty; but the jury said they were guilty and assessed damages, which they could not have done without finding that plaintiff owned the land. A verdict defective in not finding expressly upon an issue may be aided by the pleadings, and is sufficiently certain when it can be made certain by reference to the pleadings. Parker v. Leman, 10 Tex. 119; Newcomb v. Walton, 41 Tex. 318; Munn v. Martin, 4 Willson, Civ. Cas. Ct. App. § 61, 15 S. W. 195. In Newcomb v. Walton, supra, suit was on a note which was described in the petition, and the verdict was: "We, the jury, find for the plaintiff, with eight per cent. interest on the note from date." Chief Justice Roberts says that "by reference to the petition whatever ambiguity there may be in this verdict may be rendered perfectly certain, and on that ground is sufficient." If we look to the pleadings, they charge ownership of the land in Lane, and that defendants are guilty of damages in trespass. They pleaded not guilty. The verdict says they are guilty as charged, and the jury could only

have arrived at such a verdict by finding that Lane owned the land. That follows by necessary implication. Jones v. Ford, 60 Tex. 127; McKenzie v. Barrett, 43 Tex. Civ. App. 451, 98 S. W. 231; Traylor v. Townsend, 61 Tex. 148. In Meyer v. Hill, 45 S. W. 333, the verdict was: "We, the jury, find for the defendant as prayed for in his answer." And Chief Justice James said it was sufficient.

There could be but one interpretation of the verdict rendered, and that is that the defendants were guilty of trespassing, and they could not have been trespassers as to Lane unless the jury found that he owned the land. The assignments raising this question of the sufficiency of the verdict are overruled.

We have examined the other assignments, and, finding no merit therein, overrule the same.

The judgment is affirmed.