Jack D. MYER, Appellant,

v.

Paul CUEVAS, Maria LoRosso,
Norman Singleton, and Dennis
Burbank, Appellees.

No. 04–02–00759–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 27, 2003.

Winifred H. Dominguez, Law Offices of Winifred H. Dominguez, P.C., San Antonio, for appellant.

Inez M. McBride, Shannon P. Moralez, Matthews and Branscomb, A Professional Corporation, San Antonio, for appellees.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

Jack Myer sued the Board of Directors and four members of the Board of the condominium complex where he lives. The trial court dismissed Myer's suit without prejudice after finding he lacked standing to sue. Because Myer lacks the ability to recover for the type of harm alleged in his petition, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Wurzbach Towers is a condominium regime formed in 1982 as a non-profit corporation. Condominium ownership combines separate ownership of individual units with joint ownership of common elements. *See* TEX. PROP.CODE ANN. § 81.002(3) (Vernon 1995).[1] Wurzbach Towers is incorporated as the Council of Co–Owners, Inc., and owners of individual units are shareholder members of the Council. The Council elects a seven member Board of Directors which is responsible for day-to-day management and maintenance of the property.

Myer, who owns a unit at Wurzbach Towers, sued the Board of Directors as well as Paul Cuevas, Maria LoRusso, Norman Singleton, and Dennis Burbank, four Board members, in their individual capacity. Myer's petition alleged, *inter alia*, violations of the open meetings requirements of the Uniform Condominium Act, mismanagement of corporate assets, and breach of fiduciary duty. The trial court granted Myer's request for a temporary restraining order and ordered the Board and its members to not: (1) hold any meetings that are not open to the co-owners; (2) enter into any contract to update the common areas without homeowner approval; and (3) enter into any contract for expenditure of more than $15,000 without homeowner approval. After the temporary restraining order dissolved, the parties signed a Rule 11 Agreement with the same terms.

The Board members answered with a verified denial claiming they were not liable in the capacity in which they were sued. The Board entity answered separately with a general denial. Myer then moved for sanctions for violation of the

---

1. Common elements consist of the property that is part of the condominium regime other than that which belongs to an apartment in the regime, including land, foundations, walls, roofs, halls, and other parts of the realty. *See* TEX. PROP.CODE. ANN. § 81.002(6) (Vernon 1995).

Rule 11 Agreement, alleging that the Board purchased a $50,000 air conditioning unit without approval by the homeowners and held two closed and unnoticed Board meetings. After new Board members were elected, Myer non-suited the Board entity and filed an amended petition naming only Cuevas, LoRusso, Singleton, and Burbank.

The Board members filed a plea in abatement alleging that Myer lacked standing to sue them individually. The plea in abatement alleged that Myer asserted causes of action belonging to the corporation itself, which could only be brought by the Council of Co-owners, Inc. The members argued that Myer's ownership interest in the common elements via his membership in the Council does not grant him a right to recover individually for damage to the corporation itself. Their amended answer included a general denial, a specific denial based on lack of standing, and the affirmative defense of immunity from suit under the Charitable Immunities Act. The amended answer also included verified denials asserting that parties necessary to the suit had not been joined, challenging Myer's standing, and contesting his ability to recover in the capacity in which he sued.

The trial court granted the Board members' plea and ordered Myer to amend his petition to establish standing. The Board members contend that at the plea in abatement hearing, Myer's counsel announced that Myer would amend the petition to establish standing based on a delegation of authority executed by the newly-elected Board. Apparently, that delegation of authority was revoked before Myer amended his petition. After Myer failed to amend his petition to establish standing, the trial court dismissed his case without prejudice.

## SCOPE AND STANDARD OF REVIEW

Standing is an element of subject matter jurisdiction that can be raised at any time. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993). We review questions of standing under the same standard by which we review subject matter jurisdiction generally—the pleader must allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* at 446. To determine whether subject matter jurisdiction has been established, this court reviews only the pleadings for evidence establishing standing, and resolves any doubt in favor of the plaintiff. *Id.* We review disputes about subject matter jurisdiction *de novo. See State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2001).

## COMPLAINTS ABOUT COMMON ELEMENTS

This court will determine if Myer established standing based on the allegations contained in his live pleading, the First Amended Petition. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 445; TEX.R. CIV. P. 65. The court below held an unrecorded hearing on the plea in abatement, and did not hold a hearing on the motion to reinstate.[2] Myer's brief relies heavily on factual alle-

2. It is generally an abuse of discretion to fail to hold a hearing on a motion to reinstate. *See Thordson v. City of Houston*, 815 S.W.2d 550 (Tex.1991). However, Myer does not complain about the lack of a hearing on appeal and he did not request a hearing in the court below. *See Cabrera v. Cedarapids Inc.*, 834 S.W.2d 615, 619 (Tex.App.-Houston [14th Dist.] 1992, writ denied) ("[c]learly before trial court error can be found in the failure to set a hearing on a motion to reinstate the movant must first request a hearing."). Additionally, the motion to reinstate is defective for failure to comply with the verification requirement of TEX.R. CIV. P. 165a(3). For these reasons, reversal due to the lack of a hearing is not required.

gations contained in his unverified motion to reinstate. *See* Tex.R. Civ. P. 165a(3). However, the motion to reinstate and the facts contained therein were not before the trial court when it entered its dismissal order. Because Myer appeals the trial court's dismissal order and not its denial of his motion to reinstate, this court will rely only on the factual allegations contained in Myer's First Amended Petition.

▇▇▇ The test for standing requires that there be a real controversy between the parties which will actually be determined by the judicial declaration sought. *See Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). "A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Id.* (emphasis in original). Without breach of a legal right belonging to the plaintiff, no cause of action can accrue to his benefit. *See Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex.1976).

▇▇▇ "A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong." *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990). Texas property law sets out the corresponding well-established rule that "in a suit to recover for injury to land owned in common, all tenants must join." *Gulf, C. & S.F. Ry. Co. v. Cusenberry*, 86 Tex. 525, 26 S.W. 43, 45 (1894); *see also Lane v. Miller & Vidor Lumber Co.*, 176 S.W. 100, 104 (Tex.Civ.App.-San Antonio 1915, writ ref'd) (noting a joint owner of land "cannot maintain a separate action for his proportion of the damages" if the defendant timely objects to the plaintiff's failure to join co-tenants); *Scott v. Williams*, 607 S.W.2d 267, 271 (Tex.App.-

Texarkana 1980, writ ref'd n.r.e.) ("one co-tenant may not alone prosecute a suit to recover for damage to the common property, and the failure to join all co-tenants in the action renders the suit abatable"); *Hicks v. Southwestern Settlement & Dev. Corp.*, 188 S.W.2d 915, 926 (Tex.Civ.App.-Beaumont 1945, writ ref'd w.o.m.) (recognizing that in a suit affecting land owned in common, "all persons having an interest in the object of the suit, ought to be made parties"); *Arrington v. So. Pine Lumber Co.*, 16 S.W.2d 166 (Tex.Civ.App.-Texarkana 1929, no writ) ("[t]he failure to make all such owners parties plaintiff or defendant may be taken advantage of by a plea in abatement by the defendant against whom damages are sought").

This principle of property law was most recently applied in *Scott v. Williams*, 607 S.W.2d at 270, where several condominium owners brought suit for themselves individually and as "equitable representatives of the co-owners of Belle Meadow" against members of the condominium's Board of Administration. Like the present case, the plaintiffs' petition alleged that the Board members controlled the affairs of the regime for personal gain, mismanaged its affairs, and misapplied its funds. *See id.* On appeal, the plaintiff-appellees argued that the trial court's judgment only awarded damages based on the injuries suffered by the named parties and would not bind the unnamed remaining owners. *See id.* However, the Texarkana Court of Appeals recognized that the absent owners should have been made parties, either as plaintiffs or defendants, and the absence of those co-tenants prevented the trial court from according "complete relief" under Tex.R. Civ. P. 39. *See id* at 271. The court noted that joining all co-tenants would further policies of judicial economy by preventing multiple suits based on the

same injury to property owned jointly. *See id.*

On appeal, Myer argues that the Texas Condominium Act statutorily confers standing on condominium owners to sue in their own names based on their proportionate ownership of the common elements. The Condominium Act does not limit an owner's right to sue individually, but does grant the council of owners the right to institute litigation on behalf of two or more apartment owners concerning a matter related to the common elements. *See* TEX. PROP.CODE ANN. § 81.201(b) (Vernon 1995). This statute, however, does not establish standing for individual owners or exempt a plaintiff from the requirement of invoking the trial court's jurisdiction by establishing subject matter jurisdiction. Myer relies on *Celotex Corporation v. Gracy Meadow Owners Association,* 847 S.W.2d 384, 390 (Tex.App.-Austin 1993, writ denied), for the proposition that an owner can sue individually to recover his proportionate share of damages for injury done to the common elements. We disagree with this argument and decline to adopt it.

In *Celotex,* a condominium corporation, on behalf of all 102 unit owners, sued under the Texas Deceptive Trade Practices Act to recover for defective roofing shingles used on the condominium's roof. *See id* at 385. At trial, the jury found actual damages of $29,240, and the trial court apportioned that amount between the owners. *See id* at 389. Because the apportioned amount per owner was less than $1,000, the trial court trebled each recovering owner's share under the DTPA and rendered judgment awarding additional damages on that basis. *See id.* In reversing the trial court's award of individual damages, the court recognized that "[a] single, collective harm is properly remedied by a single, collective award of dam-

ages." *Id.* at 390. However, the court went on to note that "[w]here an individual co-tenant, e.g., a condominium owner, prosecutes a suit to recover damage to the common property, Texas law will allow the individual, in certain circumstances, to 'proceed with the action, recovering only the amount to which he shows himself entitled according to his proportionate interest in the common property.'" *Id., citing Scott,* 607 S.W.2d at 271. However, the "certain circumstances" referred to in *Scott* only occur in two situations: (1) "when the number or location of the co-tenants is such as to make their joinder impractical without causing great delay and inconvenience;" or (2) when a defendant fails to object to a plaintiff's failure to join the remaining co-tenants. *Id.* As neither of those circumstances are present in this case, we decline to depart from such well-settled law.

The same view was expressed by the Fourteenth Court of Appeals in *Mitchell v. LaFlamme,* 60 S.W.3d 123, 128–29 (Tex. App.-Houston [14th Dist.] 2000, no pet.). There, the court held that recovery for damages done to common areas by a townhome association's failure to maintain the common areas belongs solely to the townhome association; the unit owners have no individual property right in the common areas for which they can sue for damages. *See id.* We believe this rule is necessary because it prevents duplicate litigation arising from the same injury. *See Wingate,* 795 S.W.2d at 719. This policy-based rationale is found both in the law of corporations and in the law of condominiums. *See Scott,* 607 S.W.2d at 271. We apply this rule and hold that without joining his co-tenants, Myer lacks standing to sue for harm to the common elements of Wurzbach Towers.

### BREACH OF FIDUCIARY DUTY

Many of the allegations contained in Myer's petition state claims for

breach of fiduciary duty. To recover for breach of fiduciary duty, the plaintiff must establish the defendant was the plaintiff's fiduciary. *See Stephanz v. Laird,* 846 S.W.2d 895, 901 (Tex. App.-Houston [1st Dist.] 1993, writ denied). A fiduciary relationship is an extraordinary one that the law does not recognize lightly. *Id.* Corporate officers owe fiduciary duties to the corporations they serve. *See Faour v. Faour,* 789 S.W.2d 620, 621–22 (Tex.App.-Texarkana 1990, writ denied). However, corporate officers do not owe fiduciary duties to individual shareholders unless a contract or special relationship exists between them in addition to the corporate relationship. *See id.*

■■■■■ Myer does not allege that an informal or confidential relationship existed between himself and the Board members. Instead, his petition alleged that the Board members owed him fiduciary duties due to his position as a member of the Council of Co-owners, Inc. However, the right to proceed against an officer or former officer of a corporation for breaching a fiduciary duty owed to the corporation belongs to the corporation itself. *Stubblefield v. Belco Mfg. Co., Inc.,* 931 S.W.2d 54, 55 (Tex.App.-Austin 1996, no writ). The Board members' plea in abatement gave Myer the opportunity to remedy this defect, but Myer did not amend his pleadings to establish that a fiduciary duty was owed to him personally by Cuevas, LoRosso, Singleton, or Burbank. We therefore hold that Myer lacks standing to sue for breach of fiduciary duty, and the trial court properly dismissed this claim. *See Wingate,* 795 S.W.2d at 719.

### COMPLAINTS ABOUT VIOLATIONS OF THE DECLARATION AND BYLAWS

■■■■ Myer raises several complaints about the Board members' failures to abide by the requirements set forth in the Declaration and Bylaws of Wurzbach Towers. However, neither document was ever presented to the trial court, and both appeared for the first time as an appendix to Myer's appellate brief. Therefore, the Bylaws and Declaration, as well as the restrictions contained therein, are not properly contained in the record this court may consider. *See Mitchison v. Houston Indep. Sch. Dist.,* 803 S.W.2d 769, 771 (Tex. App.-Houston [14th Dist.] 1991, writ denied) ("[a]n appellate court must hear and determine a case on the record as filed, and it cannot consider documents attached as exhibits or appendices to briefs or motions."). Because the trial court had no evidence from which it could conclude that a contractual duty existed requiring Board members to act in a certain manner, it did not err in dismissing Myer's complaints about violations of the declaration and by-laws.

### MISMANAGEMENT OF CORPORATE FUNDS

■■■ Myer's petition also alleged that the Board members' financially irresponsible actions resulted in increased costs to the Council, which were passed on to the unit owners in the form of increased assessments by the Council. However, this complaint should face the same fate as a shareholder who claims that corporate officers' actions decreased the value of his stock—dismissal for lack of standing. *See Wingate,* 795 S.W.2d at 719, *citing Massachusetts v. Davis,* 140 Tex. 398, 168 S.W.2d 216, 222 (1942) ("[g]enerally, the individual stockholders have no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock."). Myer specifically complained that the Board allowed corporate funds to be used for the Board members' personal benefit. He claimed the Board used corporate funds to purchase a video

camera for use outside of LoRusso's front door and another to monitor her parking space. He asserted that the Board misrepresented to co-owners the purpose of such expenditures and failed to reimburse the corporation for these personal expenses. These allegations, if proven, would result in damage only to corporate assets. *See id.* Because the corporation is the aggrieved party, only the corporation has standing to sue, and the trial court properly dismissed these claims.

### COMPLAINTS ABOUT BOOKKEEPING

The Board is required to keep detailed financial records and to make those records available for examination by unit owners. *See* TEX. PROP.CODE ANN. § 82.114 (Vernon 1995) ("[a]ll financial and other records of the association shall be reasonably available at its registered office or its principal office in this state for examination by a unit owner ..."). Myer's petition alleged that the Board failed to maintain adequate books, failed to safeguard funds despite evidence of embezzlement, and refused repeated requests by co-owners to establish a written procedure for handling records. On appeal, Myer claims he is a person specifically authorized to seek relief for this violation. *See* TEX. PROP.CODE ANN. § 82.161(a) (Vernon 1995) ("[i]f a declarant or any other person subject to this chapter violates this chapter, the declaration, or the bylaws, *any person* or class of persons *adversely affected* by the violation has a claim for appropriate relief.") (emphasis added).

■ To have standing to sue for violation of the Uniform Condominium Act, the declaration, or the bylaws, Myer must allege that he was adversely affected. *See id.* Because Myer's petition failed to allege how he was adversely affected, he did not establish his standing to pursue this claim. We are aware that the act of pre-

venting an owner from viewing the books of the condominium may be considered a harm in and of itself. However, the Act expressly requires one complaining of a violation of the Condominium Act to allege that they were "adversely affected." We are unable to read Myer's naked assertion that he was denied access to corporate records as fulfilling the requirement of showing that he was adversely affected. We therefore affirm this portion of the trial court's judgment.

### HOLDING UNNOTICED, CLOSED MEETINGS

■ Myer alleged violations of the open meetings provision of the Condominium Act. *See* TEX. PROP.CODE ANN. § 82.108(b) (Vernon 1995) ("[m]eetings of the association and board must be open to unit owners ..."); TEX. PROP.CODE ANN. § 82.108(f) (Vernon 1995) ("[a]n association, on the written request of a unit owner, shall inform the unit owner of the next regular or special meeting of the board."). Myer's petition does not allege how he was adversely affected by the Board members' decision to hold unnoticed, closed meetings. Nor does it allege that he complied with the Act's written request requirement. Because Myer failed to amend his pleadings even after the plea in abatement informed him of this defect, the trial court did not err in dismissing this claim.

### COMPLAINTS ABOUT TREATMENT OF CONDOMINIUM EMPLOYEES

■ Myer alleged that Board members harassed and pressured various employees to resign in retaliation for disagreement with the Board members' positions. Myer claims the Board members acted on personal vendettas against certain employees, causing costly employee turnover. Myer does not allege that he is a third-party beneficiary of the employment contracts of the various employees. Therefore, he

lacks standing to prosecute any claim they may have for wrongful termination or employment discrimination. *See Tex. State Employees Union v. Tex. Workforce Comm'n,* 16 S.W.3d 61, 67 (Tex.App.-Austin 2000, no pet.). Furthermore, any damages from "costly employee turnover" were borne by the corporation. As the aggrieved party, only the corporation has standing to sue to recover these damages. *See Wingate,* 795 S.W.2d at 719.

### ATTORNEY'S FEES

Myer's petition asserts an entitlement to attorney's fees as a result of the Board members' statutory breaches. The Condominium Act provides attorney's fees for prevailing parties who sue to enforce the declaration, bylaws, or rules. *See* TEX. PROP.CODE ANN. § 82.161(b) (Vernon 1995). However, because Myer lacked standing to sue to enforce the declaration, bylaws, or rules, he did not establish his ability to collect attorney's fees. We therefore hold that the trial court did not err in dismissing the portion of Myer's complaint requesting attorney's fees.

### CONCLUSION

Because Myer lacked standing to bring the causes of action he asserted against the Board members individually, the trial court did not err in dismissing Myer's claim without prejudice to refiling. The judgment of the trial court is affirmed in all respects.