

# NUMBER 13-18-00037-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **CITY OF SOUTH PADRE ISLAND, TEXAS,** | **Appellant,** |
| **v.** | |
| **LA CONCHA CONDOMINIUM ASSOCIATION, CLAY PADGINTON, CINDY CLENDENEN, AND ROBERT STEENBOCK,** | **Appellees.** |

**On appeal from the 357th District Court
of Cameron County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Contreras, and Benavides
Memorandum Opinion by Justice Contreras**

Appellant, the City of South Padre Island, Texas (the City) erected a wooden

walkway on City-owned land adjacent to the La Concha condominium complex.

Appellees, the La Concha Condominium Association (the Association), its owners, Clay

Padginton, Cindy Clendenen, and Robert Steenbock, sued the City, arguing that construction of the walkway constituted an unlawful taking and inverse condemnation without due process. The trial court denied a plea to the jurisdiction filed by the City on the basis of standing, and the City now appeals that decision by two issues. We affirm.

## I. BACKGROUND

The La Concha condominium complex consists of 29 individually-owned units as well as jointly-owned common areas. In 2017, the City issued a building permit to erect the walkway at issue, which was intended to provide the public with beach access. The Association filed its original petition with the trial court on August 23, 2017, seeking a writ of mandamus and permanent injunction: (1) directing the City to revoke the building permit for the walkway, (2) enjoining the City and its agents from engaging in further construction of the walkway, and (3) compelling the City to remove the parts of the walkway that had already been constructed. The original petition stated that the Association "collectively owns" the condominium complex. The City filed a verified answer alleging, in part, that the Association lacked capacity to sue because its corporate status had been involuntarily terminated in 2015.

In a second amended petition filed on September 5, 2017, the plaintiffs were designated as the Association, "its owners," and Padginton. The City filed special exceptions to the second amended petition on grounds that, among other things, the petition did not establish whether or how the Association had authority to bring suit on behalf of its owners. The trial court granted the special exceptions, and a third amended petition was filed on November 20, 2017, stating that Padginton is the president of the Association and that the "other 26 owners" are part of the Association and are "in

2

agreement to pursue this case." The third amended petition explained that "[p]laintiffs have met and authorized this lawsuit" and included an exhibit which purported to be a complete list of the condominium owners.[1] Later, the plaintiffs filed a fourth amended petition, adding a request for a judgment "against the Defendant for property damage"; and a fifth amended petition, adding condominium owners Clendenen and Steenbock "individually and as representatives of the other o[wn]ers" as named plaintiffs.

Prior to the filing of the fifth amended petition, the City filed a motion to dismiss and plea to the jurisdiction arguing that the Association and Padginton lack standing to bring suit. In response, the plaintiffs argued that they have standing under the Private Real Property Rights Preservation Act (PRPRPA), which allows property owners to bring takings claims against government entities, and the Uniform Condominium Act (UCA), which grants condominium owners' associations the power to sue on behalf of two or more owners. *See* TEX. GOV'T CODE ANN. §§ 2007.001–.045 (West, Westlaw through 2017 1st C.S.) (PRPRPA); TEX. PROP. CODE ANN. §§ 82.001–.164 (West, Westlaw through 2017 1st C.S.) (UCA). Following the filing of the fifth amended petition, the City filed a supplemental motion arguing that the "Association, and the individual condo owners, to the extent they bring takings claims on behalf of other unnamed condo owners, still do not have standing to bring takings claims on behalf of condo owners for individual condo units that they do not own." Attached to the supplemental motion was a copy of La Concha's publicly recorded declaration and master deed, dated March 24, 1972, which includes the condominium's by-laws as an exhibit.

---

[1] The list of owners includes appellees' trial counsel.

The trial court denied the City's motion, and this interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West, Westlaw through 2017 1st C.S.) (permitting immediate appeal of interlocutory order granting or denying a plea to the jurisdiction by a governmental unit).[2]

## II. DISCUSSION

The City argues by two issues on appeal that the trial court erred in denying its plea to the jurisdiction because (1) the Association lacks standing to bring suit, and (2) Padginton, Clendenen, and Steenbock lack standing to bring suit.

### A. Standard of Review

Standing is a component of subject matter jurisdiction and is a constitutional prerequisite to maintaining suit. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). The plaintiff has the initial burden to plead facts affirmatively showing that the trial court has jurisdiction. *Id.* at 446. We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004). Whether a trial court has subject matter jurisdiction and whether the pleader has alleged facts that affirmatively demonstrate that jurisdiction are questions of law that we review de novo. *Id.* at 226.

### B. Applicable Law

The issue of standing focuses on whether a party has a sufficient relationship with

---

[2] The City's motion also argued that the suit should be dismissed or abated because the plaintiffs failed to comply with the trial court's order granting the City's special exceptions. On appeal, the City does not argue that the trial court erred in denying its motion on these grounds. Even if it did, that ruling is not subject to interlocutory appeal. *Cf.* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a) (West, Westlaw through 2017 1st C.S.).

the lawsuit so as to have a "justiciable interest" in its outcome. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). In Texas, the standing doctrine requires that there be (1) "a real controversy between the parties," that (2) "will be actually determined by the judicial declaration sought." *Id.* (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 443–44).

Governmental immunity defeats subject matter jurisdiction in suits against subdivisions of the State, such as the City, unless that immunity has been clearly and unambiguously waived by the legislature. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *see* TEX. GOV'T CODE ANN. § 311.034 (West, Westlaw through 2017 1st C.S.). The PRPRPA, codified in chapter 2007 of the Texas Government Code, waives governmental immunity for a suit by a "private real property owner" to "determine whether the governmental action of a political subdivision results in a taking." TEX. GOV'T CODE ANN. §§ 2007.004(a), .021. If the plaintiff in such a suit establishes that the governmental action resulted in a taking, the owner "is only entitled to, and the governmental entity is only liable for, invalidation of the governmental action or the part of the governmental action resulting in the taking." *Id.* § 2007.023(b). "Owner" is defined in the statute as "a person with legal or equitable title to affected private real property at the time a taking occurs." *Id.* § 2007.002(2).[3]

---

[3] "Taking" is defined in the PRPRPA as:

(A) a governmental action that affects private real property, in whole or in part or temporarily or permanently, in a manner that requires the governmental entity to compensate the private real property owner as provided by the Fifth and Fourteenth Amendments to the United States Constitution or Section 17 or 19, Article I, Texas Constitution; or

(B) a governmental action that:

(i) affects an owner's private real property that is the subject of the governmental action, in whole or in part or temporarily or permanently, in

Section 82.102 of the UCA enumerates the powers of condominium unit owners' associations, such as the appellee Association in this case. *See* TEX. PROP. CODE ANN. § 82.102(a). It states that, unless otherwise provided by the declaration which created the condominium, an owners' association, acting through its board of directors, may "institute, defend, intervene in, settle, or compromise litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the condominium." *Id.* § 82.102(a)(4).

## C.     Standing Versus Capacity

As an initial matter, we note that, although the parties describe the issue as one of standing, it may be more accurately characterized as an issue of capacity to sue, at least insofar as the Association is concerned. *See Austin Nursing Ctr., Inc.*, 171 S.W.3d at 848 (noting that the issue of whether appellee "had standing to assert a survival claim" on behalf of a decedent's estate is "more appropriately characterized as one of capacity"); *Coastal Liquids Transp., L.P. v. Harris Cty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001) ("Although the parties have argued the issue before us and below as one of standing, the real issue is [appellant's] capacity to sue."). "A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party

---

a manner that restricts or limits the owner's right to the property that would otherwise exist in the absence of the governmental action; and

(ii)     is the producing cause of a reduction of at least 25 percent in the market value of the affected private real property, determined by comparing the market value of the property as if the governmental action is not in effect and the market value of the property determined as if the governmental action is in effect.

TEX. GOV'T CODE ANN. § 2007.002(5) (West, Westlaw through 2017 1st C.S.). The City disputes that its actions amount to a taking under this definition, but it does not argue that the trial court lacks jurisdiction for this reason. *See id.* § 2007.023(a) (West, Westlaw through 2017 1st C.S.) (providing that the question of whether a government action results in a taking is a question of fact).

6

has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Austin Nursing Ctr., Inc.*, 171 S.W.3d at 848–49 (citing *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996)). If a plaintiff has legal capacity to sue on behalf of a party that has been personally aggrieved, then that plaintiff has standing to sue. *See id.* at 849 ("Although a minor, incompetent, or estate may have suffered an injury and thus have a justiciable interest in the controversy, these parties lack the legal authority to sue; the law therefore grants another party the capacity to sue on their behalf."); *Gutierrez v. Stewart Title Co.*, 550 S.W.3d 304, 317 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (noting that personal representative of estate had standing, in her representative capacity, to seek recovery of estate property).

A plaintiff must have both standing and capacity in order to bring a lawsuit. *Lorentz v. Dunn*, 171 S.W.3d 854, 856 (Tex. 2005). But unlike standing, a party's lack of capacity is an affirmative defense that must be raised by a verified pleading in the trial court, and does not deprive a court of subject matter jurisdiction. *See* Tex. R. Civ. P. 93(1)–(2); *Sixth RMA Partners v. Sibley*, 111 S.W.3d 46, 56 (Tex. 2003); *Intracare Hosp. N. v. Campbell*, 222 S.W.3d 790, 795 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Here, the allegations made by appellees, taken as true, establish that the individual La Concha unit owners were personally aggrieved. And there is no suggestion made by appellees that the Association itself was personally aggrieved. The pertinent question, therefore, is whether the Association has legal authority to sue on behalf of the aggrieved owners, given the explicit requirement in the PRPRPA that suit be brought by an "owner." This is a question of capacity, not standing.

7

Nevertheless, because the issues of standing and capacity are intertwined in this case, we address them together using the parties' terminology. Further, we assume but do not decide that the issues presented herein implicate subject matter jurisdiction and are thus reviewable by interlocutory appeal.

## D.    Analysis

In its motion in the trial court, the City argued that the Association lacks standing because it is not an owner of legal or equitable title to the subject property, and that the individual owners lack standing as to units which they do not own for the same reason. *See* TEX. GOV'T CODE ANN. § 2007.002(2); *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 644 (Tex. 2004) ("[T]o recover under the constitutional takings clause, one must first demonstrate an ownership interest in the property taken.").[4] In response, the Association argued it has standing to sue under UCA section 82.102(a)(4), which, as noted, allows condominium owners' associations to institute lawsuits "on behalf of itself or two or more unit owners on matters affecting the condominium." *See* TEX. PROP. CODE ANN. § 82.102(a)(4). Appellees note that the fifth amended petition named the plaintiffs as the Association "and its owners," along with three specific unit owners. The petition also alleged that the three named owners and "the other 26 owners" are "in agreement to pursue this case" and that the "Plaintiffs have met and authorized this lawsuit as required by Section 82.102, Texas Property Code." Appellees contend that they therefore pleaded

---

[4] In its motion before the trial court, the City did not dispute either (1) that the individual condominium owners have standing to bring claims relating to the specific condominium units that they each own, or (2) that the Association has standing to bring claims relating to La Concha's common areas. The City does dispute these propositions on appeal. We will address those issues because standing is a component of subject matter jurisdiction and may therefore be raised for the first time on appeal. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993).

8

facts which, taken as true, establish their standing to sue. *See Miranda*, 133 S.W.3d at 226, 228.

We agree with appellees. Just as an estate representative, though not personally aggrieved, is granted standing to sue on behalf of a personally aggrieved decedent, a condominium association is specifically authorized by the UCA to sue on behalf of personally aggrieved individual unit owners, even though the association itself is not personally aggrieved. *See* TEX. PROP. CODE ANN. § 82.102(a)(4).

On appeal, the City argues that appellees "do[] not even properly plead the applicability" of section 82.102(a)(4) because they did not plead facts indicating that a condominium declaration was filed as required by the UCA. We disagree. Throughout this litigation, the Association has consistently identified itself as a condominium association, and section 82.102(a)(4) applies to all condominium regimes in Texas. *See id.* § 82.002(c).[5] In any event, as noted, appellees' fourth and fifth amended petitions specifically invoked section 82.102 as the basis for the Association's standing. In the alternative, the City contends that Padginton, Clendenen, and Steenbock lack standing to bring suit relating to their own individually-owned units because they have not "properly pled title" or shown "proof of ownership." Again, we disagree. Appellees' petition alleged that they are the owners of their own condominium units, and because there is no evidence to the contrary, we must accept those allegations as true at this stage of the proceedings. *See Miranda*, 133 S.W.3d at 228.

---

[5] In general, the UCA applies only to condominium regimes established on or after January 1, 1994. *See* TEX. PROP. CODE ANN. § 82.002(a) (West, Westlaw through 2017 1st C.S.). However, section 82.102(a)(4) is one of several provisions which apply to all condominium regimes, regardless of when established, "with respect to events and circumstances occurring on or after January 1, 1994." *Id.* § 82.002(c).

The City next argues that there is nothing in the UCA that "overrules, overrides or nullifies" PRPRPA's requirement that suit be brought by an owner of legal or equitable title. It cites *Myer v. Cuevas*, in which the San Antonio Court of Appeals held that the UCA "does not establish standing for individual owners or exempt a plaintiff from the requirement of invoking the trial court's jurisdiction by establishing subject matter jurisdiction." 119 S.W.3d 830, 835 (Tex. App.—San Antonio 2003, no pet.). In that case, the plaintiff, an individual owner of a condominium unit, sued the board of directors of the condominium's owners' association for, *inter alia*, violations of the open meetings requirements of the UCA, mismanagement of corporate assets, and breach of fiduciary duty. *Id.* at 832. The appeals court, reciting the general rule that "in a suit to recover for injury to land owned in common, all tenants must join," rejected the proposition that "an owner can sue individually to recover his proportionate share of damages for injury done to the common elements." *Id.* at 835 (citing *Gulf, Colo. & Santa Fe Ry. Co. v. Cusenberry*, 26 S.W. 43, 45 (Tex. 1894)).

The City additionally observes that, under section 82.007 of the UCA, if a condominium unit is "acquired by condemnation," the "condemnation award must compensate the unit owner for the unit and its common element interest . . . ." TEX. PROP. CODE ANN. § 82.007. And the City points out that La Concha's by-laws include the following provisions:

> ARTICLE 4: CO-OWNER ACTION
>
> Without limiting the other legal rights of any co-owner or the Council, legal action may be brought by the Council in its sole discretion on behalf of two (2) or more Co-owners as their respective interests may appear with respect to any cause of action relating to the Common Elements of more than one (1) Apartment-Home.

. . . .

ARTICLE 6:  RECONSTRUCTION OR REPAIR

. . . .

6.05  Eminent Domain.  In the event of any taking of any Apartment-Home in the Condominium Project by eminent domain, the Co-Owner of such Apartment-Home shall be entitled to receive the award for such taking and after acceptance thereof he and his mortgagee shall be divested of all interest in the Condominium Project if such Co-Owner shall vacate his Apartment-Home by virtue of such taking. . . .

The City contends that the by-law regarding co-owner action allows the Association to litigate on behalf of co-owners only as to the "common elements" of the condominium, not as to individually-owned units.  It contends that the eminent domain by-law, which requires any award in a takings case to be granted to the individual owners rather than to the Association itself, indicates an intent to prohibit the Association from bringing takings claims on behalf of the individual owners.

We disagree that these considerations bar appellees' suit.  Neither UCA section 82.007 nor Article 6 of La Concha's by-laws purport to restrict the manner in which condominium associations may bring suit on behalf of its owners, and Article 4 of the by-laws explicitly states that it does not limit the legal rights available to the Association, which include those afforded by UCA section 82.102(a)(4).  Further, the City's reliance on *Myer* is unavailing.  The Texas Supreme Court has held, post-*Myer*, that a plaintiff's failure to join all property owners in a suit against a homeowners' association did not deprive the trial court of jurisdiction over the parties before it.  *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162–63 (Tex. 2004).  Even assuming *Myer* remains viable, it is distinguishable because the suit there was brought by only one owner to recover his "proportionate share of damages" for injury to the common elements of the condominium.

11

119 S.W.3d at 835. Here, on the other hand, the Association along with all of the condominium owners have been named as plaintiffs. Appellees' live petition alleges that all of the owners are "in agreement to pursue this case" and have authorized the Association's prosecution of the lawsuit in accordance with section 82.102. There is no evidence to the contrary. We must therefore accept those factual allegations as true in our jurisdictional analysis. *See Miranda*, 133 S.W.3d at 228.

Finally, the City contends that appellees' suit is barred by governmental immunity. We note that the PRPRPA waives governmental immunity to a takings suit only to the extent the plaintiff seeks "invalidation of the governmental action or the part of the governmental action resulting in the taking." TEX. GOV'T CODE ANN. § 2007.023(b); *see id.* § 2007.004 (waving immunity "to the extent of liability created by this chapter"). Appellees' claim for "property damage," asserted in their fourth and fifth amended petitions, falls outside the scope of this waiver. But the Texas Supreme Court has held that "[a] statutory waiver of immunity is unnecessary for a takings claim because the Texas Constitution waives governmental immunity for the taking, damaging or destruction of property for public use." *El Dorado Land Co. v. City of McKinney*, 395 S.W.3d 798, 801 (Tex. 2013) (citing *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980)). Accordingly, the fact that the PRPRPA does not waive immunity for damages claims does not deprive the trial court of jurisdiction in this case.

For the foregoing reasons, we conclude that the Association has standing to assert takings claims on behalf of the individual condominium owners, with respect to the individually-owned units as well as the common areas of the condominium. The City's issues are overruled.

12

### III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Justice

Delivered and filed the
25th day of October, 2018.