**AFFIRM; and Opinion Filed November 4, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00896-CV

### MARY E. BIVINS FOUNDATION, Appellant
### V.
### HIGHLAND CAPITAL MANAGEMENT L.P., JAMES DONDERO, AND MARK OKADA, Appellees

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-09-03742-C**

## OPINION

Before Justices O'Neill, Lang-Miers, and Brown
Opinion by Justice Lang-Miers

This is an appeal from a summary judgment granted in favor of appellees Highland Capital Management L.P. (HCM) and its president, James Dondero, and chief investment officer, Mark Okada (collectively Officers), on appellant Mary E. Bivins Foundation's claims arising from HCM's and the Officers' alleged mismanagement of the Foundation's investment funds. For the following reasons, we affirm the trial court's judgment.

### BACKGROUND[1]

**The Parties.** Highland Credit Strategies Fund Ltd. (the Fund) is a mutual (hedge) fund incorporated under Bermuda law in August 2005 with its principal place of business in Dallas County. The Fund, along with a fund incorporated under Delaware law, were feeder funds into

---

[1] This factual background is taken from the parties' pleadings.

the Highland Credit Strategies Master Fund L.P., a Delaware limited partnership. The Master Fund made all the investments for the two feeder funds. The Fund's governing documents included a private offering memorandum, bylaws, and subscription agreements for each investor. HCM had a contract with the Fund to act as the Fund's investment manager; the Officers were HCM's president and chief investment officer. HCM and the Officers also invested in the Fund.

The Foundation is a Texas charitable corporation with its principal place of business in Amarillo. It invested almost two million dollars in the Fund in March 2006. In March 2008, the Foundation submitted a request to redeem its total investment, which was permitted under the Fund's governing documents. The Fund valued the Foundation's shares as of the redemption date (July 2008) at $1,904,053 (the redemption amount). According to the Fund's governing documents, settlement of redemption requests was required prior to the end of the ninth month following the redemption date.

**The Winding Down of the Fund.** In October 2008, due to a deterioration of the financial markets and before the Fund settled the Foundation's redemption request, HCM made the decision to wind down the Fund and liquidate its assets. The Fund involuntarily redeemed the investments of all investors who had not previously redeemed. Those investors who had redeemed before the decision to liquidate, like the Foundation, disagreed with the investors who had not previously redeemed about how to divide the Fund's assets. The Fund eventually negotiated a plan for distribution that divided the shareholders into two groups: (1) "prior redeemers"—those investors whose withdrawal or redemption became effective on or before September 30, 2008, but who had not received full payment of their redemption amounts; and (2) "compulsory redeemers"—investors who were compulsorily withdrawn or redeemed when the decision was made to wind down the Fund. The Foundation was a "prior redeemer."

**The "Scheme of Arrangement."** The plan for distributing the Fund's assets was approved by a majority of the investors and creditors. The Fund then sought approval of the plan from a Bermuda court. It used a procedure under Bermuda law called a "Scheme of Arrangement." BERMUDA COMPANIES ACT 1981 § 99. Under this law, a company and its creditors may agree to "a compromise or arrangement" of the creditors' claims. *Id.* The Scheme of Arrangement requires "a majority in number representing three-fourths in value of the creditors" to approve the arrangement. *Id.* If the required number of creditors approve the Scheme, it then must be approved by the Bermuda court. Once approved by the court, it is "binding on all the creditors . . . and also on the company . . . ." *Id.*

The Fund's Scheme of Arrangement was approved by the required number of creditors and investors and also by the Bermuda court. Under the Scheme, "the first $30 million available for Distribution will be distributed 100% to [the Fund's] Prior Redeemers pro rata based on their Redemption Amounts relative to one another." After distributions to the compulsory redeemers who consented to the Scheme and to the non-consenting compulsory redeemers, any remaining amounts will be distributed "85% to [the Fund's] Prior Redeemers pro rata based on their Redemption Amounts relative to one another[.]" In exchange for release from liability for claims relating to the Fund's administration and winding down, HCM agreed to fund a trust account with $3 million on the Scheme's effective date and another $6 million on the third anniversary of the effective date, and the Officers agreed to guarantee the $6 million, for the benefit of the Fund's creditors and investors.

**The Foundation's Lawsuit.** When the Foundation received notice that its outstanding redemption payments would be paid on a pro rata basis with the amounts owed to other investors, it sued HCM and the Officers asserting claims arising from the alleged mismanagement of its investment funds. The claims included, among others, negligence, gross

–3–

negligence, unjust enrichment, money had and received, civil conspiracy, breach of fiduciary duty, and violation of the Texas Theft Liability Act. The Foundation alleged that HCM and the Officers intentionally delayed payment of the redemption amount to the Foundation, unlawfully appropriated those funds, and reinvested them in "highly speculative and risky investments" to keep the Fund "solvent while [HCM and the Officers] recouped their own significant investments." The Foundation alleged that it had received only $80,380 of the redemption amount to date. It sought divestment of all profits as well as actual and exemplary damages.

HCM and the Officers asked the trial court to recognize the Scheme as a judgment from a foreign country, TEX. CIV. PRAC. & REM. CODE ANN. §§ 36.001–.008 (West 2008), and then moved for no-evidence and traditional summary judgment arguing that the Scheme released them from liability for the Foundation's claims. Alternatively, HCM and the Officers argued that the Foundation's claims were repackaged breach of contract claims and barred by the economic loss rule. They also argued there was no evidence to support the Foundation's claims. The trial court granted the traditional motion for summary judgment "on all grounds stated" in the motion; it granted the no-evidence motion for summary judgment "because [the Foundation has] not submitted evidence supporting each of the elements specified in" the motion. The court dismissed the Foundation's causes of action with prejudice.

**The Appeal.** The Foundation appeals arguing in two issues that the trial court erred by granting summary judgment in favor of HCM and the Officers because (1) the court did not have subject matter jurisdiction to consider the Scheme, and (2) the Foundation raised a genuine issue of material fact on each challenged element of its claims. We resolve this appeal by analyzing

the trial court's no-evidence summary judgment under issue two; as a result, we do not need to decide issue one.[2]

## STANDARD OF REVIEW

We review the grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When a party files a combined no-evidence and traditional motion for summary judgment, we consider the no-evidence motion first. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). We review the summary judgment evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009). If the nonmovant produced more than a scintilla of probative evidence raising a genuine issue of material fact on each challenged element of its claim, we will reverse the no-evidence summary judgment. *Id*. More than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In our review, we must credit evidence favorable to the nonmovant if reasonable jurors could and disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Id*.

## CLAIMS FOR NEGLIGENCE AND GROSS NEGLIGENCE

The Foundation alleged claims for negligence against HCM and gross negligence against HCM and the Officers.

**Negligence against HCM.** The Foundation alleged that the Fund had assets to satisfy the Foundation's redemption request when it was made. But it alleged that HCM failed to act prudently and reasonably and delayed payment of the redemption request for nine months, and

---

[2] In our analysis of the trial court's no-evidence summary judgment, we do not consider HCM and the Officers' alternative arguments that the Foundation's claims are repackaged breach of contract claims or are barred by the economic loss rule because they are not necessary to final disposition of this appeal. *See* TEX. R. APP. P. 47.1.

by that time the Fund's assets had declined and there were not enough funds to fulfill the Foundation's redemption request.

**Gross Negligence Against HCM and the Officers**. The Foundation alleged that HCM and the Officers were grossly negligent by failing to segregate assets to satisfy the Foundation's redemption request and, instead, reinvested the money "in highly speculative and risky investments." It alleged that this action was taken in reckless disregard of the Foundation's rights and was done knowingly "in an effort to salvage [HCM and the Officers'] own investments."

HCM and the Officers asserted there was no evidence they owed a duty of care to the Foundation. HCM argued its duty was to the Fund pursuant to its contract to manage the Fund's investments, and the Officers argued their duties were to HCM, not to the Fund or to investors in the Fund.

**Applicable Law**

Whether a duty of care exists is a question of law for the court to decide from the circumstances of the case. *See Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). "Duty, for purposes of a negligence claim, is a question of whether the defendant has a legally enforceable obligation to comply with a general standard of conduct." *Ware v. Cyberdyne Sys., Inc.*, No. 05-10-01080-CV, 2012 WL 376671, at *4 (Tex. App.—Dallas Feb. 7, 2012, no pet.) (mem. op.). A duty of care generally is imposed by law and does not arise from a contract or promise. *Id.* It "is separate from a fiduciary duty which arises from a relationship involving a high degree of trust and confidence." *Id.* In determining whether a duty of care exists, a court must consider "'several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the

–6–

defendant.'" *City of Waco v. Kirwan*, 298 S.W.3d 618, 623–24 (Tex. 2009) (quoting *Edward D. Jones & Co. v. Fletcher*, 975 S.W.2d 539, 544 (Tex. 1998)).

## Analysis

The Foundation argues that it raised a genuine issue of material fact on each element of its negligence claim because it "put forth evidence that HCM was the manager of the Fund and that HCM made the investment decisions for the Fund and keeps the books for the Fund. . . . [And] HCM employs all of the people who are involved in the investment management of the Fund." It argues that "[b]ased on the control HCM [and the Officers] had over the Fund, and the fact that all decisions, including how much to invest and/or withdraw from a particular investment rested with HCM [and the Officers], they owed duties [to the Foundation] not to negligently manage the Fund."

The Foundation does not cite, nor have we found, any Texas authority stating that a hedge fund's investment manager and the manager's employees owe a duty of care to individual investors to protect the investors' investments in the fund. Instead, to support its argument, the Foundation relies on its expert's opinion that HCM acted recklessly by failing to segregate assets in the Fund to honor the Foundation's redemption request. The expert testified that "the managing company who was responsible for managing [the Fund]. . . failed . . . to equitably treat [the Foundation] . . . I do think that they did not carry out their responsibilities, obligations." But although the Foundation's expert criticized HCM's handling of the Foundation's redemption request, he did not testify that HCM owed the Foundation a duty of care for purposes of a negligence claim.

The Foundation also cites two cases to support its argument that it was owed a duty of care: *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180 (1963), and *Hand v. Dean Witter Reynolds, Inc.*, 889 S.W.2d 483 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

But those cases do not support a determination that HCM and the Officers owed a duty of care under these circumstances. The *SEC* case involved the interpretation of the Investment Advisers Act of 1940 and whether the SEC could obtain an injunction ordering the investment adviser to disclose certain information to his clients. 375 U.S. at 181–82. And although the *Hand* case involved a negligence claim, it was in the context of an agency relationship between a client and a broker, and the court concluded there was no duty of care in that case. 889 S.W.2d at 492–96. These cases do not persuade us that we should balance the *Kirwan* factors in this case to conclude that HCM and the Officers owed a duty to the Foundation. *See* 298 S.W.3d at 623–24).

The Foundation cites the Restatement (Second) of Agency § 425 for the general proposition that "[t]he duties of an agent who has authority to make and to manage investments are similar to those of the trustee of a formal trust[.]" But it offered no evidence that HCM or the Officers were its agents.

We conclude that the trial court did not err by granting a no-evidence summary judgment on the Foundation's claims for negligence because HCM and the Officers did not owe the Foundation a duty of care under the circumstances of this case. Consequently, we further conclude that the court did not err by granting a no-evidence summary judgment on the Foundation's claims for gross negligence. *See Kirwan*, 298 S.W.3d at 623 (defendant liable for gross negligence only to extent it owed plaintiff a legal duty); *Ware*, 2012 WL 376671, at *4 (subject to exception in worker's compensation cases, if no liability for negligence exists, liability for gross negligence cannot be imposed).

## CLAIMS FOR UNJUST ENRICHMENT AND MONEY HAD AND RECEIVED

The Foundation also alleged claims against HCM for unjust enrichment and money had and received.[3]  On appeal the Foundation does not distinguish between these two claims or address the specific elements for which HCM argued there was no evidence.  Rather, it contends generally that it raised a genuine issue of material fact on both claims by producing evidence that HCM admitted the Foundation made a proper redemption request and was owed money; that instead of liquidating and segregating Fund assets to satisfy its obligations, HCM chose to reinvest those assets in risky investments; and that HCM, as the Fund's largest investor, made the decision to implement the Scheme of Arrangement to protect its own investment in the Fund and take undue advantage of its position as investment manager.  As a result, the Foundation argues, "HCM has or will receive fund assets that are otherwise due and owing to" the Foundation.

### Applicable Law

Unjust enrichment occurs when the person sought to be charged has wrongfully secured or passively received a benefit that would be unconscionable to retain.  *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied).  To prevail, a plaintiff must show that the defendant obtained a benefit from the plaintiff by fraud, duress, or the taking of an undue advantage.  *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

A claim for money had and received "'belongs conceptually to the doctrine of unjust enrichment.'"  *Edwards v. Mid-Continent Office Distributors L.P.*, 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied) (quoting *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ)).  It is not premised on wrongdoing, but seeks to determine to

---

[3] These claims were not asserted against the Officers.

–9–

which party, in equity, justice, and law, the money belongs. *Id.* To prevail, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to the plaintiff. *Id.*

**Analysis**

The Foundation does not cite any summary judgment evidence showing that HCM has received any distribution of Fund assets. *See Heldenfels Bros., Inc.*, 832 S.W.2d at 41. And an allegation that a party "will receive" assets sometime in the future does not raise a fact issue about whether the party currently holds money that in equity and good conscience belongs to the Foundation. *See Edwards*, 252 S.W.3d at 837. We conclude that the Foundation did not raise a genuine issue of material fact on its claims for unjust enrichment and money had and received and that the trial court did not err by granting a no-evidence summary judgment on these claims.

**CLAIM FOR CIVIL CONSPIRACY**

The Foundation alleged that HCM and the Officers conspired to protect their own investments in the Fund by failing to liquidate assets of the Fund to satisfy the Foundation's redemption request.

**Applicable Law**

A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Proof of a civil conspiracy depends upon proof of an underlying tort. *Id.* ("a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable").

**Analysis**

To support its argument on the civil conspiracy claim, the Foundation cites the same evidence it cited to support its claims for negligence, unjust enrichment, and money had and

received, all of which we have rejected. HCM and the Officers argue that a claim for civil conspiracy must fail when there is no evidence of an underlying tort. We agree. Because the Foundation has not prevailed in raising a genuine issue of material fact on the underlying tort claims, its claim for civil conspiracy also must fail. *See id*. We conclude that the trial court did not err by granting a no-evidence summary judgment on the Foundation's civil conspiracy claim.

## CLAIM FOR BREACH OF FIDUCIARY DUTY

The Foundation argues that it presented evidence raising a genuine issue of material fact on its claim for breach of fiduciary duty by showing "that HCM was responsible for managing the Fund and failed to carry out its duties and obligations to [the Foundation] by failing to segregate assets and raise cash immediately to honor the redemption requests." The Foundation argues that "as a result of the control . . . HCM had over [the Foundation], they [sic] owed fiduciary duties, including the duty to prudently manage the Fund and not to engage in self-dealing conduct at the expense of [the Foundation]."

### Applicable Law

To prevail on a claim for breach of fiduciary duty, an appellant first must establish that the appellee owed the appellant a fiduciary duty. *Johnston v. Kruse*, 261 S.W.3d 895, 902 (Tex. App.—Dallas 2008, no pet.). Whether a fiduciary duty exists is a question of law. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005). In some cases, a fiduciary relationship arises as a matter of law, such as in attorney–client or trustee relationships. *Id*. Additionally, an informal fiduciary duty may arise "from 'a moral, social, domestic or purely personal relationship of trust and confidence.'" *Id*. (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998)). But "'not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship.'" *Id*. (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–77 (Tex. 1997)). Instead, "[a] fiduciary relationship is

–11–

an extraordinary one that the law does not recognize lightly." *Myer v. Cuevas*, 119 S.W.3d 830, 836 (Tex. App.—San Antonio 2003, no pet.). And "[c]orporate officers owe fiduciary duties to the corporations they serve[,] . . . [but they] do not owe fiduciary duties to individual shareholders unless a contract or special relationship exists between them in addition to the corporate relationship." *Id*.

### Analysis

The Foundation does not cite, and we have not found, any Texas authority recognizing a fiduciary relationship between an investor in a hedge fund and the hedge fund's investment manager. To support its argument, the Foundation again cites *SEC v. Capital Gains Research Bureau, Inc.* and *Hand v. Dean Witter Reynolds*. But these cases are not persuasive. The issue in the *SEC* case was not whether a fiduciary duty was owed, but whether an investment adviser had a duty to disclose to his clients that the adviser had "a practice of purchasing shares of a security for his own account shortly before recommending that security for long-term investment and then immediately selling the shares at a profit upon the rise in the market price following the recommendation." 375 U.S. at 181. The court concluded that this practice, known as "scalping," "operates as a fraud or deceit upon any client or prospective client" and the adviser was required to make full disclosure of the practice to his clients. *Id*. at 181–82. And in the *Hand* case, the appellant did not assert a claim for breach of fiduciary duty. 889 S.W.2d at 492 n.5. However, the court noted that even if the appellant had asserted a claim for breach of fiduciary duty, the court would have concluded that no fiduciary duty arose under the circumstances of that case. *Id*.

HCM and the Officers rely on authority from the District of Columbia Court of Appeals to assert that there is no fiduciary duty between the Fund and the Foundation. In that case, a hedge fund and the fund's investment adviser appealed the SEC's order equating "client" with

–12–

"investor" for the purpose of registering with the SEC under the "Hedge Fund Rule." *Goldstein v. SEC*, 451 F.3d 873, 874 (D.C. Cir. 2006). In considering the order, the court provided a detailed review of the development and regulation of hedge funds. *Id.* at 874–84. It ultimately concluded that investors in the fund were not clients of the fund's adviser and, consequently, were not owed a fiduciary duty by the adviser. *Id.* at 881–84. In reaching this conclusion, the court stated, "The adviser is concerned with the fund's performance, not with each investor's financial condition," and explained:

> If the investors are owed a fiduciary duty and the entity is also owed a fiduciary duty, then the adviser will inevitably face conflicts of interest. Consider an investment adviser to a hedge fund that is about to go bankrupt. His advice to the fund will likely include any and all measures to remain solvent. His advice to an investor in the fund, however, would likely be to sell. For the same reason, we do not ordinarily deem the shareholders in a corporation the "clients" of the corporation's lawyers or accountants. While the shareholders may benefit from the professionals' counsel indirectly, their individual interests easily can be drawn into conflict with the interests of the entity. It simply cannot be the case that investment advisers are the servants of two masters in this way.

*Id.* at 880–81 (internal citations and footnote omitted).

The *Goldstein* court's analysis is persuasive. The only basis for imposing a fiduciary duty alleged by the Foundation in this case is HCM's position as investment manager of the Fund and the Officers' positions as employees of HCM. But HCM's contract was with the Fund to act as its investment adviser. To impose a fiduciary duty on HCM and the Officers to the Foundation under the facts of this case would place them in the position of being the "servants of two masters." *Id.* Additionally, the Foundation did not present any evidence that it had an informal trust or confidential relationship with HCM and the Officers or received direct investment advice from HCM and the Officers that would give rise to a fiduciary duty. *See Cuevas*, 119 S.W.3d at 836; *see also Goldstein*, 451 F.3d at 879–81. We will not impose a fiduciary duty in the absence of circumstances showing a formal or informal relationship giving

–13–

rise to such a duty.  Consequently, we conclude that the trial court did not err by granting a no-evidence summary judgment on the Foundation's claim for breach of fiduciary duty.

### CLAIM UNDER THE TEXAS THEFT LIABILITY ACT

The Foundation alleged a claim against HCM and the Officers for violation of the Texas Theft Liability Act.  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 134.001–.005 (West 2011 & Supp. 2014).  It argues that it raised a genuine issue of material fact on its TTLA claim by showing that, at the time it requested redemption of its shares, it ceased to be an investor in the Fund and became a creditor.  It argues that because it was a creditor of the Fund, the redemption amount was not property of the Fund or at least there was a question of fact about whether the redemption amount was property of the Fund.  The Foundation also argues that HCM and the Officers "misappropriated money which rightfully belong[ed]" to the Foundation by "self-dealing in order to protect their own investment in the Fund by reinvesting in illiquid assets and failing to honor the outstanding redemption requests."

### Applicable Law

The TTLA states that "[a] person who commits theft is liable for damages resulting from the theft."  *Id.* § 134.003(a).  It defines "theft" as "unlawfully appropriating property or unlawfully obtaining services as described by Section 31.03, 31.04, 31.06, 31.07, 31.11, 31.12, 31.13, or 31.14, Penal Code."  *Id*. § 134.002(b).  Section 31.03 of the penal code, the provision that applies here, states that a person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property."  TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2014).  "Appropriate" means to "acquire or otherwise exercise control over property other than real property."  *Id*. § 31.01(4).  Appropriation of property is unlawful if, among other things, it is without the owner's effective consent.  *Id*. § 31.03(b)(1).

**Analysis**

**Creditor of the Fund**. The Foundation does not cite authority to support its argument that when it ceased to be an investor and became a creditor of the Fund that the redemption amount was no longer property of the Fund. HCM and the Officers argue that creditors do not "hold an ownership interest in the assets of the Fund." We agree with HCM and the Officers.

A creditor of a corporation does not own the corporation's assets and generally may not, on its own behalf, sue the directors of the corporation for negligent mismanagement of the corporation's affairs. *See Sutton v. Reagan & Gee*, 405 S.W.2d 828, 835 (Tex. Civ. App.—San Antonio 1966, writ ref'd n.r.e.). And as a creditor of the Fund, the Foundation could not sue HCM and the Officers for mismanagement of the Fund. *See id.*; *see also Eagle Props. Ltd. v. Scharbauer*, 807 S.W.2d 714, 724 (Tex. 1990) (creditor cannot maintain personal action against directors of corporation for breaching duty to corporation) (citing *Sutton*, 405 S.W.2d at 834–35). Instead, any cause of action lay with the Fund to sue on its own behalf to recover for the benefit of all its creditors. *See Sutton*, 405 S.W.2d at 835.

**Misappropriation of Foundation's Money.** The Foundation did not present authority to support its argument that the money in the Fund became the property of the Foundation at the time the Foundation submitted its redemption request. Nor did it present summary judgment evidence raising a fact issue about whether HCM and the Officers unlawfully received assets from the Fund or acted unlawfully by failing to pay the Foundation its entire redemption amount. *See* TEX. PENAL CODE ANN. § 31.03(a) (theft requires unlawful appropriation of property with intent to deprive owner of property); *Freeman v. State*, 707 S.W.2d 597, 605–06 (Tex. Crim. App. 1986) (person accused of theft must have exercised unauthorized control over property). We conclude that the trial court did not err by granting a no-evidence summary judgment on the Foundation's claim under the TTLA.

–15–

**CONCLUSION**

We affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

120896F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

MARY E. BIVINS FOUNDATION,
Appellant

No. 05-12-00896-CV     V.

HIGHLAND CAPITAL MANAGEMENT
L.P., JAMES DONDERO, AND MARK
OKADA, Appellees

On Appeal from the 68th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-09-03742-C.
Opinion delivered by Justice Lang-Miers,
Justices O'Neill and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Highland Capital Management L.P., James Dondero, and Mark Okada recover their costs of this appeal from appellant Mary E. Bivins Foundation.

Judgment entered this 4th day of November, 2014.