

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00026-CV

---

MARCIA MORRISON AND
CHARLES J. MORRISON

APPELLANTS

V.

MARSHA GAGE

APPELLEE

----------

FROM THE 271ST DISTRICT COURT OF WISE COUNTY
TRIAL COURT NO. CV14-10-797

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In seven issues in this accelerated, interlocutory appeal, appellants Marcia and Charles Morrison appeal the trial court's order granting a temporary injunction to appellee Marsha Gage. *See* Tex. Civ. Prac. & Rem. Code Ann.

---

[1]*See* Tex. R. App. P. 47.4.

§ 51.014(a)(4) (West 2015).  We dissolve the order and remand the case to the trial court.

## II.  Factual and Procedural Background

According to Gage's original petition, Marcia began working for her in 2012.  In October 2014, Gage sued Marcia and Charles, Marcia's husband, alleging that they had wrongfully diverted between $265,900–$1 million of Gage's money.  Gage sued the Morrisons for conversion, theft under the Theft Liability Act, breach of fiduciary duty, fraud, unjust enrichment, money had and received, and conspiracy.  Gage also sought a temporary restraining order (TRO), a temporary injunction, and a permanent injunction.  The trial court granted the TRO, set Gage's bond at $1,000, and set the application for temporary injunction for hearing on November 24, 2014.  On November 24, 2014, the Morrisons filed a motion to dissolve the TRO and sought damages for wrongful issuance of process.

At the November 24, 2014 hearing, Gage's counsel informed the trial court that he had three witnesses and the hearing would require approximately two hours of the court's time.  The trial court informed him that it did not have two hours available that day.  After a brief, off-the-record discussion, Gage's counsel presented the testimony of Donna Ramsey, a Wells Fargo branch manager, who provided Gage's bank account records for 2012, 2013, and 2014, which were admitted into evidence.  Gage's counsel then argued to the trial court that the money was transferred "to the Morrison account being account number ending in

2

4641." No one testified that the C. Morrison on the account ending in "4641" was Charles Morrison, nor did anyone testify that the transfers were unauthorized.

The Morrisons' counsel explained the case as, "[T]hey allege that we stole a whole bunch of money. We deny we stole any money. It's an accounting fight . . . this is supposedly [an] injunction telling our clients that they can't spend their own money."[2] The Morrisons' counsel also argued that as a matter of law, the trial court could not grant a temporary injunction because Gage's pleadings did not support it. The trial court stated that it would review the law and that if it could make a ruling, it would do so, and if not, they would have another hearing.[3]

On December 8, the trial court held another brief hearing. The trial court began the hearing by stating

> I have consulted with the attorneys in the case regarding several matters in the case. It is, I will state, a somewhat complicated situation with regard to the actual gathering and exchange of evidence in the case, so here's the order.

> The Court at this time orders that the temporary restraining order previously agreed to by the parties[4] is hereby made a temporary injunction. The parties are ordered to continue to cooperate with each other with the exchange of information. . . .

---

[2]At the hearing, the Morrisons' counsel represented to the trial court, "I'm happy to submit to the ruling on the law and for the Court to evaluate on its own with or without evidence." The Morrisons' counsel withdrew as attorney of record in March 2015 and the Morrisons acquired new counsel.

[3]Pursuant to the "Order Extending Temporary Restraining Order," the TRO dissolved at midnight on November 24, 2014. The court made no ruling prior to the dissolution of the TRO later that evening.

[4]No agreed temporary restraining order appears in this record.

3

The Court leaves to the parties the right obviously that they can come back to the Court in the event the temporary injunction—there are matters that need to be tweaked in that. But I think that it is broad enough to protect . . . the evidence in the case as well as allow the parties to conduct their life [sic] as much as normal as they can under the temporary injunction; in order words, the prior—the very first TRO submitted to the Court was too restrictive.[5] I think the agreement that y'all reached after the last hearing is not, and that's what the Court expects you to operate under.

After mentioning that the parties should ask the court coordinator for a time in four to six weeks to come back to court if necessary regarding deadlines, the trial court asked if there were any questions. The Morrisons' counsel replied, "No, your Honor, that's acceptable to the Morrisons," and Gage's counsel concurred. No evidence was offered at this hearing, and it is unclear from the brief, on-the-record colloquium between the trial court and the attorneys whether the Morrisons' counsel found acceptable the issue of an agreed temporary injunction or the trial court's deadline-related instructions. *Cf.* Tex. R. Civ. P. 11. The trial court signed the temporary injunction order on January 7, 2015.

The order provides, in pertinent part,

On the 8th day of December, 2014, Plaintiff's Petition for Temporary Injunction against Defendants Marcia Morrison and Charles J. Morrison came on for hearing, due notice having been given. The parties appeared by and through their attorneys. On considering the evidence received, the argument of counsel, and subsequent agreement of counsel, the Court finds and concludes

---

[5]The original TRO restrained the Morrisons from, among other things, transferring, conveying, encumbering, moving, or otherwise disposing of any assets of any kind over a cumulative amount of $5,000 per month for household necessities and related expenses. The subsequent injunction increased the cumulative amount to $12,000.

4

that Plaintiff will probably prevail on the trial of this cause; that Defendants may dispose of assets as soon as possible and before the Court can render judgment in this cause; that that Plaintiff might not be able to recover her loss; that such disposition might thereby alter the status quo and tend to make ineffectual a judgment in favor of Plaintiff; and that unless Defendants are deterred from carrying out that intention, Plaintiff will be without any adequate remedy at law in that there will be no assets remaining to satisfy the Judgment.

The final page of the January 7, 2015 order states "Agreed as to form only" above the signatures of the parties' attorneys.

The Morrisons timely filed their notice of appeal, and in April, the trial court amended the temporary injunction order to include a date and time for the final trial on the merits in compliance with rule of civil procedure 683. *See* Tex. R. Civ. P. 683. The amended order includes that the trial court "notes and overrules Defendants' objection to this Order," and states, "Agreed as to form" above the signatures of the parties' attorneys.

### III. Temporary Injunction

In their sixth issue, the Morrisons argue that the trial court abused its discretion by failing to hear evidence during the temporary injunction proceeding, complaining that a temporary injunction cannot be granted without evidence and only if the evidence establishes a probable right to the relief sought on final trial. Gage responds that the trial court admitted into evidence "approximately 300 pages of [her] bank records showing the disputed transfers" without objection at the November 24, 2014 hearing before it reset the proceedings for a later date due to time constraints.

5

To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g); *see Millwrights Local Union No. 2484 v. Rust Eng'g Co.*, 433 S.W.2d 683, 686 (Tex. 1968) ("To authorize issuance of the writ, Rust had the burden of not only pleading facts which, if proved, would entitle it to a permanent injunction, but, as well, of offering evidence tending to prove its probable []right thereto on final hearing and of probable injury in the interim.").

To show a probable right of recovery, the applicant need not establish that it will finally prevail in the litigation, but it must, at the very least, present some evidence that, under the applicable rules of law, tends to support its cause of action. *Sands v. Estate of Buys*, 160 S.W.3d 684, 687 (Tex. App.—Fort Worth 2005, no pet.); *see also In re Tex. Natural Res. Conservation Comm'n*, 85 S.W.3d 201, 204 (Tex. 2002) (orig. proceeding) (observing that a temporary injunction has more stringent proof requirements than a TRO). The only question before the trial court at this stage is whether the applicant is entitled to preservation of the status quo pending trial. *Shor v. Pelican Oil & Gas Mgmt., LLC*, 405 S.W.3d 737, 749 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

Whether to grant a temporary injunction is within the trial court's discretion, and we will not substitute our judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable

6

discretion. *Butnaru*, 84 S.W.3d at 204. The trial court does not abuse its discretion when some evidence reasonably supports its decision. *Id.* at 211. But, absent a clear agreement by the parties, a trial court has no discretion to grant injunctive relief without supporting evidence. *See Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.*, 975 S.W.2d 546, 560 (Tex. 1998). This is because a temporary injunction should be extraordinary, not routine. *Allied Capital Partners, LP v. Proceed Tech. Res., Inc.*, 313 S.W.3d 460, 466 (Tex. App.—Dallas 2010, no pet.). As explained by the supreme court,

> The purpose of a temporary injunction is to preserve the status quo of the subject matter of a suit pending a final trial of the case on its merits. A trial judge therefore has broad discretion to grant or to deny a writ when the pleadings and the evidence show a probable right or recovery in the applicant and a probable injury to him if the writ is not granted. A necessary corollary of that rule is that a trial judge abuses his discretion if he grants a writ when the evidence fails to furnish any reasonable basis for concluding that the applicant has a probable right of recovery. To furnish a reasonable basis for the conclusion the evidence need not establish that the applicant will finally prevail in the litigation, but it must, at the very least, tend to support a right or recovery.

*Camp v. Shannon*, 348 S.W.2d 517, 519 (Tex. 1961) (citations omitted).

The only evidence admitted at either injunction hearing consisted of 296 pages of Gage's bank records, containing three years of records of transactions for Gage's bank account. Each month's bank statement lists both Marcia's name and Gage's name on the mailing address and the checking account. The bank statements from February 29, 2012 to January 31, 2013, show online transfers ranging in amounts from $1,000 to $5,000, from Gage's account to "Checking

7

Xxxxxx4641." Starting with the February 28, 2013 statement, Wells Fargo apparently modified the way it recorded the transferee account description, and all of the subsequent statements reflect online transfers made to "Morrison C Checking Xxxxxx4641." The bank statements from February 28, 2013 to September 30, 2014, show online transfers ranging in amounts from $200 to $50,000.

Although Gage claims that the bank records show unauthorized transfers from her account and the unauthorized commingling of her funds with the funds in the Morrisons' accounts, these records show only that Marcia was on the account with Gage and transfers were made to an account owned by "C. Morrison."[6] Standing alone, this evidence is insufficient to support the trial court's

---

[6]Gage's TRO application was supported by her affidavit, in which she explained that Marcia had access to her residence, post office box, accounts, and sensitive financial information and that she never authorized Marcia to transfer Gage's funds into the Morrisons' accounts. But the affidavit was not admitted into evidence at either injunction hearing, and the record does not reflect that the parties agreed that it would constitute any evidence at the hearings. *See Millwrights Local*, 433 S.W.2d at 686 (holding that Rust's sworn petition did not constitute evidence to support the issuance of the injunction because "in the absence of agreement by the parties, the proof required to support a judgment issuing a writ of temporary injunction may not be made by affidavit"); *see also Armendariz v. Mora*, 526 S.W.2d 542, 543 (Tex. 1975) (holding, in light of *Millwrights Local*, that granting a temporary injunction would be improper when "absolutely no evidence" was adduced tending to show that Mora would suffer any injury if the injunction were not issued); *cf. Pierce v. State*, 184 S.W.3d 303, 307 (Tex. App.—Dallas 2005, no pet.) ("We conclude a trial court may issue a temporary injunction based on affidavit testimony *admitted into evidence* at the hearing thereon.").

8

conclusion that Gage "will probably prevail on the trial of this cause."[7]  *See*

*Murphy v. Tribune Oil Co.*, 656 S.W.2d 587, 589 (Tex. App.—Fort Worth 1983,

---

[7]Gage alleged that the Morrisons had committed conversion, theft under the Theft Liability Act, breach of fiduciary duty, fraud, unjust enrichment, money had and received, and conspiracy.  A probable right of recovery is shown by alleging a cause of action and presenting evidence tending to sustain it.  *Argyle ISD ex rel. Bd. of Trs. v. Wolf*, 234 S.W.3d 229, 236 (Tex. App.—Fort Worth 2007, no pet.).  Gage's bank records constituted evidence of some, but not all, of the elements in each of her claims.  A conversion claim requires establishing that the plaintiff owned or had legal possession of the property or entitlement to possession, the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of or inconsistent with the plaintiff's rights as an owner, the plaintiff demanded return of the property, and the defendant refused to return the property.  *Clifford v. McCall-Gruesen*, No. 02-13-00105-CV, 2014 WL 5409085, at *4 (Tex. App.—Fort Worth Oct. 23, 2014, no pet.) (mem. op. on reh'g).  To prevail on a theft claim under the Theft Liability Act, a plaintiff must establish that she had a possessory right to property, that the defendant unlawfully appropriated property in violation of the penal code, and that the plaintiff sustained damages as a result of the theft.  Tex. Civ. Prac. & Rem. Code Ann. § 134.002 (West Supp. 2014), §§ 134.003, .005 (West 2011); *Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523, 542 (S.D. Tex. 2011).  A breach-of-fiduciary-duty claim requires showing a fiduciary relationship between the plaintiff and defendant, a breach of the defendant of her fiduciary duty to the plaintiff, and an injury to the plaintiff or benefit to the defendant as a result of her breach.  *Lindley v. McKnight*, 349 S.W.3d 113, 124 (Tex. App.—Fort Worth 2011, no pet.).  To recover for fraud, a plaintiff must show that a material misrepresentation was made, that the representation was false, that when the misrepresentation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, that the speaker made the misrepresentation with the intent that the plaintiff should act upon it, and that the plaintiff acted in reliance on the misrepresentation and thereby suffered injury.  *Alahmad v. Abukhdair*, No. 02-12-00084-CV, 2014 WL 2538740, at *9 (Tex. App.—Fort Worth June 5, 2014, pet. denied) (mem. op. on reh'g).  This court has previously held that unjust enrichment by itself is not an independent cause of action, *see Argyle ISD*, 234 S.W.3d at 246, but it has been treated as part of a claim for money had and received, which requires a determination of whether a defendant holds money that in equity and good conscience belongs to the plaintiff.  *See Mary E. Bivins Found. v. Highland Capital Mgmt. L.P.*, 451 S.W.3d 104, 112 (Tex. App.—Dallas 2014, no pet.).  The essential elements of civil conspiracy

writ dism'd) ("When the evidence upon which the injunction is granted fails to furnish any reasonable basis for concluding that the applicant has a probable right of recovery, an abuse of discretion occurs.").

Gage nonetheless contends that because the Morrisons "actively agreed" to the order granting the temporary injunction at the subsequent hearing, they should be estopped from challenging the order. Gage cites *Henke v. Peoples State Bank of Hallettsville*, 6 S.W.3d 717, 719–20 (Tex. App.—Corpus Christi 1999, pet. dism'd w.o.j.), and *Ayala v. Minniti*, 714 S.W.2d 452, 456 (Tex. App.—Houston [1st Dist.] 1986, no writ), in support of her position. However, both of these cases are inapposite on the facts and circumstances before us here.

In *Henke*, the court held that the appellant waived his right to complain of errors in the temporary injunction order when he failed to timely appeal the order

---

require a showing of two or more persons, an object to be accomplished, a meeting of the minds on the object or course of action, one or more unlawful, overt acts, and damages as the proximate result. *Fix It Today, LLC v. Santander Consumer USA, Inc.*, No. 02-14-00191-CV, 2015 WL 2169301, at *2 (Tex. App.—Fort Worth May 7, 2015, no pet. h.) (mem. op.).

Gage generally relies on *Gatlin v. GXG, Inc.*, No. 05-93-01852-CV, 1994 WL 137233 at *1, *7–8 (Tex. App.—Dallas Apr. 19, 1994, no writ) (not designated for publication), but the trial court in that case granted the temporary injunction after a six-hour hearing. *Id.* at *2. The applicant in that case sued Gatlin for fraud, breach of fiduciary duty, and conversion and testified that Gatlin, acting as her financial manager, fraudulently induced her into signing blank checks from her individual account and presented evidence that Gatlin used the funds for his residence and that his use of some of the funds was completely unauthorized; she also produced evidence that Gatlin had written numerous company checks to his personal friends or to companies in which he had a financial interest without her authorization. *Id.* at *1, *4–5.

10

and subsequent modified orders but also noted that when the record showed no evidence of fraud, collusion, and misrepresentation, appellant was bound by the order to which he had agreed despite his contentions that it failed to comply with rule of civil procedure 683's mandatory requirements. 6 S.W.3d at 719–21. However, many of our sister courts have held otherwise with regard to agreed temporary injunction orders based on the supreme court's holding that rule 683's requirements are mandatory and must be strictly followed. *InterFirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986); *see Conlin v. Haun*, 419 S.W.3d 682, 686–87 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *State Bd. for Educ. Certification v. Montalvo*, No. 03-12-00723-CV, 2013 WL 1405883, at *1–2 (Tex. App.—Austin Apr. 3, 2013, no pet.) (mem. op.); *Leighton v. Rebeles*, 343 S.W.3d 270, 273 (Tex. App.—Dallas 2011, no pet.); *In re Corcoran*, 343 S.W.3d 268, 269 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding) (op. on reh'g); *Poole v. U.S. Money Reserve, Inc.*, No. 09-08-00137-CV, 2008 WL 4735602, at *11–13 (Tex. App.—Beaumont Oct. 30, 2008, no pet.) (mem. op.); *In re Garza*, 126 S.W.3d 628, 270–73 (Tex. App.—San Antonio 2003, orig. proceeding [mand. denied]); *Evans v. C. Woods, Inc.*, 34 S.W.3d 581, 583 (Tex. App.—Tyler 1999, no pet).

With regard to the lack of a trial setting in the original temporary injunction, the trial court's issuance of an amended order that complies with rule 683's requirements during the pendency of this appeal means that this particular issue—the Morrisons' third issue on appeal—is moot and therefore no longer

11

before us.[8] *See Fischer v. Rider*, No. 02-10-00294-CV, 2011 WL 167226, at *1 (Tex. App.—Fort Worth Jan. 13, 2011, no pet.) (mem. op.) (overruling appellants' complaint about the lack of a trial date when trial court signed an amended temporary injunction order that included a trial date after appellants perfected their appeal).

And although Gage cites *Ayala* in support of her agreed-order argument, the appellant in that child-support-payments case interrupted the presentation of evidence to offer to stipulate to the injunction ultimately issued by the trial court. 714 S.W.2d at 453–56. The trial court in that case rendered the order after both parties expressly voiced their consent to an injunction temporarily enjoining Ayala

[8]In their third issue, the Morrisons complained that the temporary injunction order was void because it did not state a date and time for a final hearing on the merits. In *Lifeguard Benefit Services, Inc. v. Direct Medical Network Solutions, Inc.*, we relied on *InterFirst* in addressing whether a temporary injunction order was unenforceable for being vague, overly broad, and not specific in its terms as required by rule 683, but the order at issue was not agreed to by the parties. 308 S.W.3d 102, 116 (Tex. App.—Fort Worth 2010, no pet.); *see also Armstrong-Bledsoe v. Smith*, No. 02-03-00323-CV, 2004 WL 362293, at *1 (Tex. App.—Fort Worth Feb. 26, 2004, no pet.) (mem. op.) (holding that temporary injunction order was void for failing to include a bond amount and a trial setting but not mentioning whether deficient order had been agreed to by the parties); *Big D Props., Inc. v. Foster*, 2 S.W.3d 21, 22–23 (Tex. App.—Fort Worth 1999, no pet.) (holding that temporary injunction order was void when it did not state the basis for its issuance or contain a trial date and that rule 683's requirements may not be waived but not mentioning whether deficient order had been agreed to by the parties); *Byrd Ranch, Inc. v. Interwest Sav. Ass'n*, 717 S.W.2d 452, 454–55 (Tex. App.—Fort Worth 1986, no pet.) (holding that rule 683's provisions are mandatory, rendering temporary injunction order void when the order failed to meet specificity requirement but not mentioning whether deficient order had been agreed to by the parties). Thus, the Morrisons' third issue, had it not been mooted by the amended order, would have been one of first impression in this court.

12

and his attorneys from expending any proceeds received from his pending lawsuit and after conferring with the parties and orally announcing its holding on the record. *Id.* at 454–57.

In contrast, as set out above in our factual recitation, this record is insufficient to establish specifically what the Morrisons' counsel found "acceptable" at the conclusion of the December 4 hearing. Likewise, the court's reference to "subsequent agreement of counsel" is insufficient to clarify which provisions of the order, if any, were agreed to by counsel. Combined with the signatures of counsel reciting that the order was "agreed as to form only," we cannot say that the temporary injunction order signed on January 7—or the amended order signed on April 28 that was "agreed as to form"—constituted an agreed order. *See Bureaucracy Online, Inc. v. Schiller*, 145 S.W.3d 826, 829 (Tex. App.—Dallas 2004, no pet.) (distinguishing *Ayala* when the trial judge granted the injunction in open court at the conclusion of a contested hearing, directed counsel to jointly review a proposed order, and then entered an order that the attorneys presented him which indicated their approval of the order's language). In *Schiller*, the Dallas court stated, "Appellants' agreement to the form of the injunction order after the trial court granted the injunction can in no way be considered an agreement to the order's substance." *Id.*; *see In re D.C.*, 180 S.W.3d 647, 649 (Tex. App.—Waco 2005, no pet.) (observing that some Texas courts differentiate between the phrase "approved as to form and substance" and "approved as to form," with the former indicating a consent

13

judgment while the latter does not); *Baw v. Baw*, 949 SW.2d 764, 766–67 (Tex. App.—Dallas 1997, no writ) (stating that for a valid consent judgment, each party must explicitly and unmistakably give its consent and that a party who approves only the form of a judgment forfeits no right to appeal); *see also* Robinson C. Ramsey, *"In Form" Consent: Appealing "Approved" Judgments*, 9 App. Advoc. 3, 3 (1995) (stating that an attorney or party who approves a judgment as to form only does not waive the right to appeal the judgment because an approval as to form indicates only that the person acknowledges that the written judgment accurately reflects the court's ruling, leaving the approving party free to appeal the judgment) (citing *Sigma Sys. Corp. v. Elec. Data Sys. Corp.*, 467 S.W.2d 675, 677 (Tex. Civ. App.—Tyler 1971, no writ)); *cf. Boufaissal v. Boufaissal*, 251 S.W.3d 160, 161 (Tex. App.—Dallas 2008, no pet.) (holding that appellant could not appeal judgment after approving and consenting to entry of the agreed divorce decree as to both form and substance).

Because there is no indication on this record that the Morrisons agreed to the trial court's conclusion that "Plaintiff will probably prevail on the trial of this cause"—a portion of the order's substance rather than its form—and the evidence is insufficient to support such a conclusion, we hold that the trial court abused its discretion by granting the injunction, and we sustain the Morrisons' sixth issue.

## IV. Conclusion

Having sustained the Morrisons' sixth issue, we dissolve the order and remand the case to the trial court. In light of this disposition, we do not reach the Morrisons' remaining issues. *See* Tex. R. App. P. 47.1.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL: GARDNER, GABRIEL, and SUDDERTH, JJ.

DELIVERED: July 2, 2015